Conrad *v.* The State.

Filed March 12, 1896.

---

No. 17,633.

## CONRAD *v.* THE STATE.

CONTINUANCE.—*Absent Witness.*—A sufficient excuse for the want of further effort by defendant to secure the attendance of a witness returned "Not found," during the eight days between the return of the writ and the trial, is not shown by the statement in an affidavit for a continuance that his attorneys made inquiry to find out if such subpœna had been served and returned, and to find the subpœna, but were unable to obtain such information or find the subpœna until the day of trial, where it is not shown when or of whom the inquiries were made.

SAME.—*Sickness of Defendant.—Defense.—Criminal Law.*—A continuance in a criminal case, on the ground that owing to the sickness of defendant he was prevented from making a proper preparation for his trial, is properly refused, where he fails to disclose by a plain and consistent statement facts preventing the preparation for trial.

INSTRUCTIONS TO JURY.—*Joint Assignment.*—The correctness of any one of the instructions covered by a joint assignment of error, or the incorrectness of any one of the requested instructions covered by a joint assignment to refusals to instruct, renders error in the giving of any particular instruction, or the refusing of any particular request, unavailable on appeal.

APPELLATE PROCEDURE.—*Cause for New Trial.—How Established.*—The truth of an alleged cause for a new trial must be established in the Appellate Court by the bill of exceptions, or by affidavits brought into the record by such bill.

Conrad *v*. The State.

SAME.—*Issue of Fact.*—An issue of fact determined by the trial court upon conflicting evidence, is conclusive upon the Supreme Court.

SAME.—*Abuse of Discretion.*—*Review.*—A clear and strong showing of a gross abuse of discretion to the manifest injury of the party complaining, is essential to the review upon appeal of the exercise of a purely discretionary power by the trial court.

CHANGE OF VENUE.—*Local Prejudice.*—*Discretion.*—*Criminal Law.*—The granting of a change of venue in a criminal case, on the ground of the existence of local prejudice and excitement, is within the sound discretion of the trial court, under section 1840, R. S. 1894.

NEW TRIAL.—*Misconduct of Jurors.*—*Criminal Law.*—*Inspecting Locus in Quo.*—*Experiments*—A new trial will be granted in a criminal case, where a number of the jurors, in the absence of, and without the consent of, either the court or the parties, went to the scene of an alleged occurrence material to the questions involved, and there made experiments, and conversed with witnesses with reference to such alleged occurrence, although they filed affidavits that their visits were for mere idle curiosity, and that their experiments and observations did not enter into their deliberations, nor control to any extent their verdict.

From the Boone Circuit Court.

*P. H. Dutch, B. S. Higgens* and *A. J. Shelby,* for appellant.

*W. A. Ketcham,* Attorney-General, for State.

HACKNEY, C. J.—The appellant was indicted in the court below for an assault and battery with the intent to commit murder in the first degree. He was tried, convicted, and his punishment assessed at eleven years in the State's prison and a fine in the sum of $50.

There was a change from the regular judge and the proceedings assigned as error were before the Hon. Joshua G. Adams as special judge. One of the assignments of error urged by counsel for the appellant is that the trial court erred in overruling his motion for a continuance. The motion specified two causes; the absence of witnesses who were alleged to reside in

Marion county, Indiana, and the sickness of the appellant, which prevented a proper preparation for his trial.

The affidavit for a continuance includes a subpoena issued to the sheriff of Marion county on the 9th day of January, 1895, directing the appearance of the witnesses therein named on the 21st day of January, 1895. This writ was returned on the 13th day of January, 1895, the witnesses named not having been found. The want of further effort to secure the attendance of said witnesses is sought to be excused by the following showing: "That defendant's said attorney made inquiry to find out if said subpoena had been served and returned and to find said subpoena, but was unable to obtain such information or find such subpoena or where said subpoena was until the noon adjournment of said court at this day," when the clerk informed him that one of the appellee's attorneys had the writ. Who it was that appellant's counsel made inquiry of, and when such inquiry was made do not appear. Conceding the truth of the showing, the only inquiry by counsel may have been of the defendant and may not have been made until the morning of the day set for the trial, January 21, eight days after the return. He was required to show diligence to procure the atendance of the witnesses, and this would not appear without showing an inquiry of the officer whose duties would include a knowledge of the return of the writ and that such inquiry was seasonably made. The affidavit states that the appellant was confined in jail from December 13, 1894, "until the — day of December, 1894;" that "he had no means himself with which to employ counsel to defend him and was unable, on the 14th day of January, 1895, to make arrangements and employ counsel necessary for his defense; that through ex-

posure in coming to Lebanon to make such arrangements with is counsel, he took a severe cold and had a chill, aggravating the sickness from which he was suffering at the time, and for which he was being treated at the time by Dr. J. N. Parr;   *   *   *   that by reason of said sickness this defendant was unable to further visit his attorney or prepare his case for trial," and did not give his attorneys the names of a number of his witnesses until the morning of the day set for the trail.   It was shown, also, that he was released from custody, upon bond, "on the — day of December, 1894," and was rearrested and returned to jail January 18, 1895.   Dr. Parr's affidavit accompanied that of the appellant and disclosed "that on the 4th day of January, 1895, he was called to see" appellant, and "found him suffering with ————, and has since been under treatment, and his condition was such that he could not safely have gone out of doors; that he advised him to remain indoors while under treatment" with "bichloride of mercury."

We do not learn from this showing how long he was first confined in jail nor why he did not call and consult counsel during that confinement.   It does not appear that means were not at his command, for the employment of counsel, at any time, and the statement that "on the 14th day of January, 1895," he was unable to "make arrangements and employ counsel necessary for his defense" does not exclude the existence of available means and ample ability at other times to employ counsel.   Nor does it appear that, though he resided several miles from the county seat, counsel did not visit and consult with him daily about his defense.   Nor does it appear that he had no opportunity, after rearrested and before the morning set for the trial, to advise his counsel of a "number of witnesses" he desired.   By some means action was

taken in his behalf, looking to the trial, as early as January 9, when subpoena was issued, and some method had then been secured of communicating the names of the witnesses included in that writ. His condition "on the 4th day of January, 1895," elicited advice to remain indoors while under treatment. How long it continued to be dangerous for him to leave the house is not shown. It is evident, we think, that the burden of disclosing, by a plain and consistent statement of facts, preventing the employment of counsel and the preparation for trial, was not discharged. There was no error in overruling the motion for a continuance.

Another contention of counsel is that the trial court erred in refusing a change of judge, after that already referred to, and further, that the special judge was guilty of misconduct in characterizing the affidavit for such change as "rank perjury." This contention is not properly supported by the record. The affidavits intended to show the abuse of discretion and the alleged misconduct of the judge, are not only unsupported by a bill of exceptions, but the bill purporting to contain them is not signed by the judge, for the expressed reason that the facts therein stated were untrue. It is well recognized practice that the truth of an alleged cause for a new trial must be established by the bill of exceptions or by affidavits brought into the record by such bill. Elliott App. Proced., section 817, and authorities there cited.

Complaint is made, also, of the action of the trial court in refusing to change the venue of said cause from Boone county. The application for the change was supported by numerous affidavits of the existence of local prejudice and excitement, and many counter affidavits were filed and considered by the court. From the affidavits on behalf of the appellant it ap-

peared that the crime had excited considerable comment by the press and the people; that it was feared the appellant might be lynched; that the sheriff, entertaining this fear, had removed the appellant to the Clinton county jail, and that the house of a woman in Zionsville, the place where the shooting occurred, had been stoned and she had been threatened, it was alleged, because of her friendship for the appellant and her promises of assistance in his defense.    Each of such affidavits contained the expressed opinion of the affiant that a fair and impartial trial could not be had in Boone county.

The counter affidavits, made by residents in and near Zionsville, were to the effect that the affiants were acquainted with the expressed sentiments of the people of Boone county and that the appellant could obtain a fair and impartial trial of the cause in that county.

The granting of the change of venue was not imperative, but rested within the sound discretion of the court.    R. S. 1894, section 1840 (R. S. 1881, section 1771); *Reinhold* v. *State*, 130 Ind. 467; *Spittorff* v. *State*, 108 Ind. 171; *Masterson* v. *State*, 144 Ind. 240; *Ransbottom* v. *State*, 144 Ind. 250. An issue of fact determined by the trial court upon conflicting affidavits is conclusive upon this court.    *Schnurr* v. *Stults*, 119 Ind. 429.    The discretion vested in the trial court was not implied, but was given by the express language of the statute.    It must be understood that where a purely discretionary power is exercised it cannot be reviewed unless the complaining party shall show clearly and strongly that the court grossly perverted its power to his manifest injury.    Elliott App. Proced., sections 597-605; *Detro* v. *State*, 4 Ind. 200; *Gordon* v. *Spencer*, 2 Blackf. 286.    A mere error in judgment, such as may arise

from not properly ascertaining upon which side of the question lies the preponderance of the evidence, is not ground for such review.

That there had been a violent demonstration of feeling against the woman mentioned was clearly shown, but that this was because she was expected to assist the appellant in his defense was given merely as the opinion or conclusion of those whose affidavits were filed. If we have not misinterpreted the evidence upon the trial, it may be doubted whether that conclusion is nearer the true one than that she was blamed, by those guilty of that violence, for exercising an influence over each of the parties to the crime charged, which brought on the conflict between them. However, it does not appear that the sheriff's action was because of any actual threats of violence towards the appellant. The difference of opinion, between those making affidavits on either side, as to whether the appellant could obtain a fair and impartial trial would clearly have justified the court's action. But it must not be supposed that the question of discretion was one depending alone upon the preponderance of the evidence given by affidavit. If that were the question there would be no discretion to be exercised, but the judgment of the court would be narrowed to the issue presented by the affidavits. There are few cases that excite special public interest, where conflicting views and sentiments could not be presented upon the question of a fair and impartial trial. The court should exercise a careful discrimination between the natural and necessarily conflicting views of the friends and the enemies of the accused, and should bring to bear that knowledge which comes to every man of observation and experience of the varying and changing views of the masses in times of excitement, and again when pas-

sion has had an opportunity to subside. The man who presides over a judicial tribunal cannot, and should not, as a judge, exclude from his mind, in the exercise of a purely discretionary matter, depending upon a condition of public sentiment, all knowledge and all impressions coming to him as a man. While he may be aided and enlightened often by affidavits, as shown in *Anderson* v. *State*, 28 Ind. 22, that is not the only source of information and judgment. If it were, it is plain, as we have already shown, that a wide and unlimited discretion given by the statute would be narrowed to a question depending upon the weight of the evidence.

We find here no case requiring a review for manifest perversion of discretion.

Thirty-nine causes were assigned by the motion for a new trial, many of which have not been presented in argument, and some of which are presented only by suggestions as to their places in the record and without the statement of reasons or authority supporting them. The assignment as to the giving of instructions is joint as to all given, and that as to the refusal of appellant's instructions is joint also. If, therefore, any one given was correct, and if any one refused was incorrect or was covered by any given, there would be no available error. Elliott App. Proced., section 791; *Wallace* v. *Exchange Bank*, 126 Ind. 265; *Ohio, etc., Ry. Co.* v. *McCartney*, 121 Ind. 385; *State, ex rel.,* v. *Gregory*, 132 Ind. 387. The objections urged to the instructions in argument are not specific, but are too general to suggest an error with reference to any one of them. It is not claimed, however, that all given were wrong, and that all asked were correct and were not covered by any that were given.

The principal issue upon the trial was upon the appellant's special plea of insanity at the time of the

commission of the alleged crime. Upon this issue there was evidence of an attempt, on the part of the appellant, while confined in jail, to commit suicide by hanging. At the close of the testimony in the case, and upon the adjournment of the court in the evening, eleven of the jurors went to the jail and viewed the chamber where it was claimed said attempt was made. While there they procured the wire with which the hanging was attempted, and some of their number, in the presence of the others, discussed, with the prisoners who had given evidence upon the trial as to said attempt, the questions as to the excessive length of the wire, affording an opportunity for the appellant's feet to reach the floor while it was about his neck, and the ease with which he could have reached the side walls with is hands and feet and thereby saved his life. Testing the length of the wire, some of the number held or fastened the wire as it was said by the prisoners to have been fastened at the time of said attempted suicide, while another stood under it. This conduct of the jurors was without the knowledge or consent of the court, or either of the parties, and was unknown to the defendant until after the verdict. The facts are brought into the record by the affidavits of said prisoners filed in support of the appellant's motion for a new trial, and, as we have stated them, are not controverted. The eleven jurors, however, filed affidavits that their visit to and observations at the jail were from mere idle curiosity; that they were not requested by another to do what they did, and that the observations and experiments made by them did not enter into their deliberations nor control to any extent their verdict. In this State the right of the jury to view the place where any material fact occurred is given by statute and is to be exercised "Whenever, in the opinion of the court and

with the consent of all parties, it is proper." R. S. 1894, section 1896 (R. S. 1881, section 1827). At such view the place is shown by some one appointed by the court for that purpose and "While the jury are thus absent, no person, other than the officer and the person appointed to show them the place, shall speak to them on any subject connected with the trial." At each adjournment the jury were admonished by the court that it is their duty not to converse among themselves nor to suffer others to converse with them on any subject connected with the trial, until the cause is finally submitted to them. R. S. 1894, section 1895 (R. S. 1881, section 1826).

It would appear, therefore, that the conduct of the eleven members of the jury on the occasion in question was a gross violation of duty, not only in viewing the place mentioned, but in talking to others and permitting others to talk with them upon a subject connected with the cause. The abuse of their privilege was greater from the fact that their communications were with witnesses in the case, upon whose sworn evidence, given upon the trial, the facts or occurrence in question became material. One of these witnesses made the remark to the jurors which excited their suspicion that the wire was too long, and induced the experiment to which we have referred.

It has been settled in this State that the view contemplated by the statute does not constitute evidence, but simply enables the jury to apply to the location the evidence received from the witnesses. *Shular* v. *State*, 105 Ind. 289, and authorities there cited. In the case just cited, distinguishing between the mere view of the location and the reception of evidence, it was suggested, with reference to *State* v. *Bertin*, 24 La. Ann. 46, that explanations, by a witness, made of a diagram, while viewing the location, were evidence

given in the absence of the accused. In *Erwin* v. *Bulla*, 29 Ind. 95, it was held that when the jury made the statutory view the injunction against conversing upon the subject of the trial was an important requirement and should be carefully observed, and the verdict was set aside because of a statement made by one of the witnesses during the view and in the hearing of the jurors.

In *Heffron* v. *Gallupe*, 55 Me. 563, it was well said that "The theory of our jury trials is that all parties and witnesses are to be heard in open court, in the presence and under the direction of the presiding judge. The law is extremely tenacious of this cardinal doctrine, and looks with distrust and aversion upon any departure in practice from its strictness. The oath of the juror is to decide according to the law and evidence given to him—given to him according to the rules of evidence in open court and with the parties face to face. It surely cannot mean evidence given to a juryman by a party outside of the court room, to be read and pondered upon in secret, before joining his fellows in deliberation on the verdict."

In the case of *Tyrrell* v. *Bristow*, 1 Alcock & Napier Rep., p. 398, it was said: "It is highly reprehensible in jurors to endeavor to procure *ex parte* evidence out of court, and thereby influence the minds of the other jurors in consulting upon the verdict. Their duty is sacred and should be most conscientiously discharged, which can only be effected by their keeping their minds free and clear of all representations which do not grow out of the evidence adduced in court. Evidence should not be acted upon, which all the jury had not originally an opportunity of acquiring in the legitimate way, which is prescribed and sanctioned by the rules of law and which should be in the presence of the parties or their professional agents."

It is true that this was said in a case where some
of the jurors viewed the location in question and the
observations were regarded as evidence.   Though we
may differ from the conclusion that the view is evi-
dence, we cannot differ in the conclusion reached
when evidence is obtained out of court.   The evidence
upon which any juror acts should be the evidence
upon which all of the panel may act.

In *Deacon* v. *Shreve*, 22 N. J. L. 176, pending the
trial some of the jurors visited the *locus in quo* and ex-
amined a spring about which witnesses had testified,
and it was said, in part, that "Laying aside any con-
sideration as to the action of the plaintiff himself,
these jurors, in the absence and without the knowl-
edge of the defendants, by preconcerted arrange-
ment, met the friends and witnesses of the plaintiff
and privately conferred with them in regard to mat-
ters which were considered to have an important
bearing on the case.   It was nothing less than an *ex
parte* examination of evidence in the cause, the in-
fluence of which we cannot know, nor, indeed, ought we
to inquire as to it.   However inadvertent the conduct
of the jurors may have been, who were perhaps drawn
into it by the pretence that the evidence of the two
witnesses, as to the spring, had been misrepresented,
still it was gross irregularity, which, if permitted,
would destroy all confidence in the purity of jurors,
and in the impartiality and fairness of their verdicts.
Though verdicts should not be set aside on slight
grounds not likely to be prejudicial to a party, yet
certainly the welfare and security of the community
require us to interfere in a case like this."

In Thompson & Merriam on Juries, section 417, it is
said:   "Inspection by triers of fact is recognized as
one of the modes of producing evidence, or rather of
dispensing with it; and while a court will, in proper

cases and under proper safeguards, permit the jury to visit the *locus in quo*, to inspect the scene where a particular thing is alleged or shown to have been done, or the weapon with which a crime is alleged to have been committed, and the like, yet it is never tolerated that jurors should make such inspections of their own accord. It is well settled that jurors must decide cases upon such evidence as is produced before them by the parties to the litigation, and that they cannot go in search of evidence privately, or act upon evidence thus obtained." See also sections 353 and 354 of the same work. In *Hayward* v. *Knapp*, 22 Minn. 5, a new trial was ordered because of statements, pending a view of the *locus in quo*, made by one accompanying the jury by order of the trial court for the purpose of pointing out the places.

If we have reached a correct conclusion in holding that the statements of persons at the jail, at least one of whom was a witness to the occurrence in question, were evidence, it was the privilege of the accused to meet the witnesses face to face and by counsel to be heard in a public trial with reference to such evidence. Section 12, Art. 1, Ind. Const.; R. S. 1894, section 58.

The case of *Luck* v. *State*, 96 Ind. 16, presented the misconduct of a bailiff in charge of a jury who, in walking with them, took them near the place of the homicide. This court said: "The conduct of the bailiff, in walking with the jury about the city and passing the place of the homicide, was reprehensible in the extreme, and for it he was deserving of punishment. Such conduct upon the part of a careless or perverse bailiff often makes a new trial necessary, greatly to the prejudice of the administration of justice. * * * But with respect to such misconduct the law is well settled that it will not authorize a new

trial where, as in the present case, it is shown that the jury were not subjected to any improper influences, and were not in any way attempted to be tampered with, and where the verdict is clearly right upon the evidence." In the present case, however, the misconduct was that of the jurors in violating the injunction of the court and in not only making a view of the location without the permission of the court or the consent of all the parties, but in conversing with and permitting witnesses in the case to converse with them about a material question in the case, and in making experiments to illustrate the suggestion of such witnesses. In a case where the jury were viewing by direction of the court, it was held that "Perhaps, strictly speaking, the jury had no right to do anything more than view the premises, thereby to enable them to apply the evidence given upon the trial." *City of Indianapolis* v. *Scott*, 72 Ind. 196.

In the present case, while engaged in an unauthorized act, the jurors do that which, strictly speaking, they had no right to do, that is to say, they conversed with others upon a question of importance in the case and made illustrations to prove the truth or falsehood of the appellant's evidence of insanity. Can it be said that because the evidence clearly shows the appellant's guilt that such conduct was not prejudicial to his rights? We think it cannot. The statute which saves a reversal for errors or defects which do not "prejudice the substantial rights of the defendant," has been construed by this court to include "merely abstract and harmless errors." *Epps* v. *State*, 102 Ind. 539. It is a harmful error, in our judgment, for jurors to so utterly and recklessly violate their duties as to seek and obtain testimony against an accused out of court and in disregard of his constitutional and legal rights. If it were merely a question as to whether

the misconduct had subjected the jurors to corrupt influences, as in the case of *Riley* v. *State*, 95 Ind. 446, and cases of the class to which that belongs, we might reach a different conclusion, but here the defendant has been deprived of a privilege guaranteed by the constitution, and it is not for the court to speculate about the prejudicial character of the misconduct. Nor do the affidavits of the jurors, that they disregaarded the evidence and observations, affect the question. The rights of the accused in this matter are too sacred to be made to depend upon the possibility of inexperienced triers excluding voluntarily from their minds facts and observations calculated to materially affect the question of guilt. The most skilled triers are often influenced unconsciously by circumstances which they may try never so hard to exclude from consideration. The men constituting the jury in question were evidently not of that class whose minds were on the alert to avoid an injustice to one whose liberty may be made to depend upon their caution and care in observing their duties. They wholly forgot their oaths as jurors, forgot the admonition of the court and sought information which should not have come to them except with the consent of the accused.

For the misconduct of the jury, the judgment of the lower court is reversed, with instructions to grant a new trial.

Filed March 12, 1896.