Vlado NAUMOSKI, Great American Lines, Inc., Independent Contractors Leasing Corporation, and AFA Enterprises, Appellants–Defendants,

v.

Miguel BERNACET and Janet Bernacet, Appellees–Plaintiffs.

No. 45A03–0303–CV–90.

Court of Appeals of Indiana.

Nov. 25, 2003.

---

Perry W. Hoag, Tomassi, Radogno, Cameli & Hoag, Chicago, IL, Karl L. Mulvaney, Nana Quay–Smith, Candace L. Sage, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

F. Joseph Jaskowiak, Kevin G. Kerr, Hoeppner Wagner & Evans, Valparaiso, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants Vlado Naumoski, Great American Lines, Inc., Independent Contractors Leasing Corporation, and AFA Enterprises (collectively, "Naumoski") appeal the trial court's granting of appellees-plaintiffs Miguel and Janet Bernacet's Motion to Correct Errors. Specifically, Naumoski contends that the trial court should not have granted a new trial where a juror's affidavit stated that another juror voiced his personal knowledge of the location of the traffic accident that was involved in this litigation. Finding that the trial court properly admitted the affidavit, but that it was an abuse of discretion to grant a new trial, we reverse.

### FACTS

On December 4, 1998, Miguel Bernacet was traveling eastbound in Lake County on interstate 80/94, also known as the Borman Expressway, in his Honda Civic. Naumoski, the owner-operator of the tractor and flatbed trailer he was driving, was also traveling eastbound on the Expressway. Somewhere between the Kennedy Avenue and Cline Avenue exits, which are approximately three-quarters of a mile apart, the two vehicles collided.

Bernacet filed a negligence complaint on January 11, 2000, alleging that Naumoski swerved into Bernacet's lane. Naumoski filed his answer, denying responsibility for the accident. At the trial, the jury was asked to determine whether Naumoski turned right into the back of Bernacet's vehicle or whether Bernacet cut left in front of Naumoski. Part of the debate centered on whether there were three lanes on the Expressway at the time of the accident such that Bernacet had to move to the left because he was in an access lane that ended, or whether there were four lanes on the Expressway such that Bernacet would not have moved from the right lane before he reached his intended exit of Cline Avenue. The Expressway had undergone a great deal of construction between the date of the accident and the trial, and conflicting evidence was produced at trial regarding the number of lanes that existed in 1998. Additional debate centered on the extent of Bernacet's injuries.

During the final jury instructions, the trial court gave the jury a slight variation of Indiana Pattern Jury Instruction No. 1.09, saying, "In weighing the testimony to determine what or whom you believe, you should use your own knowledge, experience, and common sense gained from day to day living." Tr. p. 942. The trial court also instructed the jury that, "[i]n determining whether any fact at issue has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who called them. And all exhibits received into evidence, regardless of who may have produced them." Tr. p. 933.

On October 3, 2002, after four hours of deliberation, the jury returned a verdict for Naumoski. On November 5, 2002, the Bernacets timely filed a Motion to Correct Error and filed a memorandum in support of that motion, alleging juror misconduct. The Bernacets supported their motion with the affidavit of juror Shannon Niles, which stated that another juror had related to the jury that he lived near the scene of the accident and that he knew that in 1998 the Expressway had three travel lanes and a merge lane as Nauomski contended. Several other jurors concurred that Bernacet was in a merge lane at the time. The

Bernacets alleged that this constituted gross misconduct that most likely resulted in prejudice, and therefore requested a new trial. Naumoski filed a Motion to Strike Niles's affidavit, contending that it violated the fundamental rule prohibiting impeachment of jury verdicts by an affidavit concerning the juror's thought processes. The trial court conducted a hearing on the matter on February 4, 2003, and six days later granted the motion to correct error and also granted a new trial. Naumoski now appeals.

### DISCUSSION AND DECISION

Naumoski contends that the trial court abused its discretion when it granted Bernacet's motion to correct errors. Specifically, Naumoski argues that the information contained in juror Niles's affidavit was insufficient grounds upon which to grant a new trial.

 In resolving the issue of juror misconduct advanced by the defendants, we note that the trial court's ruling with respect to a motion to correct error carries a strong presumption of correctness and will be reversed only for an abuse of discretion. *South Bend Clinic, Inc. v. Kistner*, 769 N.E.2d 591, 592 (Ind.Ct.App. 2002). Indiana Rule of Evidence 606(b) states:

(b) Inquiry into Validity of Verdict or Indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

We also note that a jury's verdict generally may not be impeached by the testimony of the jurors who returned it. *South Bend Clinic*, 769 N.E.2d at 592 (citing *Ward v. St. Mary Med. Ctr. of Gary*, 658 N.E.2d 893, 894 (Ind.1995)). However, the plaintiff may obtain a new trial based on allegations of extraneous prejudicial information if he proves that extraneous information was improperly brought to the attention of the jury and that it involved gross misconduct that was prejudicial to the complaining party. *Id.* That is, the existence of prejudice must be affirmatively demonstrated; it will not be assumed. *Id.* at 593. Finally, we note that it is within the province of the jury to resolve discrepancies in the evidence. *Wedge v. Lipps Indus., Inc.*, 575 N.E.2d 332, 338 (Ind.Ct.App.1991).

 Here the trial court acted within its discretion by admitting juror Niles's affidavit into evidence. Bernacet's motion to correct errors alleged that extraneous prejudicial information was improperly brought to the jury's attention. The affidavit was necessary for the court to determine whether the information provided to the jurors was extraneous and prejudicial. Therefore, the trial court was within its discretion when it considered the affidavit.

 The question remains, however, as to whether the trial court acted properly by granting Bernacet a new trial. Juror Niles's affidavit stated that one of the male jurors said that he was familiar with the appearance of the accident scene in 1998

because he lived nearby and walked his dog in that area. Appellant's App. p. 57. He further stated that at the time of the accident there were only three lanes of eastbound traffic between Kennedy Avenue and Cline Avenue and that the fourth lane was a merge lane that ended at some point before Cline Avenue. Appellant's App. p. 57. Several other jurors stated that they also remembered the lane configuration in 1998 to be that way, and they therefore concluded that the accident was the fault of Bernacet. Juror Niles originally believed that the accident was the fault of Naumoski, and she would not have agreed to a verdict against Bernacet absent the statement of the other juror about his recollection of the lane configuration in 1998. Appellant's App. p. 58.

Throughout the trial, both sides presented conflicting evidence regarding the configuration of the Expressway on the day of the accident. Gary Wayne Cooper, an accident reconstructionist, testified that there were not three lanes of eastbound traffic, tr. p. 546, but rather that there were four lanes. Tr. p. 560. Bernacet testified that he was in the far right lane and that he was under the impression that from Kennedy Avenue to Cline Avenue there were only three lanes. Tr. p. 89, 92, 94, 96, 144. However, his counsel corrected him while he was testifying, saying, "You keep saying the third lane. There is [sic] four lanes out there." Tr. p. 94. Naumoski testified on direct examination that there were three lanes but agreed that there were four on cross examination. Tr. p. 491–92, 506. Indiana State Trooper Matthew Lawrence, one of the investigating officers at the accident scene, testified that there were four lanes at the accident scene. Tr. p. 13. The police report, however, described three lanes of traffic. Appellant's App. p. 82. In short, the evidence was in conflict. The positions of the cars and whether one of them may have been changing lanes at the time of the accident were central issues to the determination of the case. Thus, it was not only proper but also necessary for the jury to resolve this conflict.

Inasmuch as the trial court instructed the jury to consider their "own knowledge, experience, and common sense gained from day to day living," it was not improper for a juror to say that he personally remembers the configuration of the Expressway in 1998. Based on juror Niles's affidavit, all of the jurors except for her remembered that there were three lanes at the location of the accident in 1998. Appellant's App. p. 58. This knowledge was gained by traveling on or near the road in their "day to day living" in Lake County. Appellant's App. p. 57. Additionally, as stated above, the number of lanes was a central issue about which a great deal of testimony was adduced. Therefore, the juror's discussion of their recollection of the number of lanes was not extraneous.

■ Nevertheless, Bernacet contends that the juror's statements were gross misconduct based on his assertion that

Nothing has changed in our system of jurisprudence to alter ... the reasoning of the Indiana Supreme Court, over one hundred years ago in *Conrad v. State:* " ... Evidence should not be acted upon, which all the jury had not originally an opportunity of acquiring in the legitimate way, which is prescribed and sanctioned by the rules of law and which should be in the presence of the parties or their professional agents."

Appellant's Br. p. 16–17 (quoting *Conrad v. State*, 144 Ind. 290, 43 N.E. 221, 224–25 (1896)). Contrary to Bernacet's assertion, many things have changed in the last 107 years, not the least of which being the new Indiana Jury Rules, which became effec-

tive on January 1, 2003. In the past, jurors were treated as empty vessels that were to be filled only with the information the court, legal counsel and the witnesses provided them during the trial. These new rules were promulgated to

> aid in educating the jurors and [to] promote a better understanding of their vital role within our legal system. Additionally, Hoosier jurors may very well be provided with an opportunity to reconnect with their fellow citizens and their government. Moreover, the application of the rules may communicate to jurors that their time is valued.

*Hall v. Eastland Mall,* 769 N.E.2d 198, 205 (Ind.Ct.App.2002). We no longer expect or wish for our jurors to ignore the knowledge with which they enter the courtroom. As in this case, we instruct them to use that knowledge. Thus, it cannot be gross misconduct to do precisely what the court instructed the jurors to do.

Be that as it may, Bernacet goes on to argue that he was prejudiced by the juror's comments because he did not have a "full and fair opportunity to rebut his testimony." Appellant's App. p. 55. However, as discussed above, there was a great deal of testimony during the trial regarding the number of lanes at the scene of the accident in 1998. Tr. p. 13, 82, 89, 92, 94, 96, 144, 491–92, 506, 546, 560. Bernacet had ample opportunity during the trial to offer evidence to the jury that there were four lanes rather than three. Therefore, Bernacet cannot show that he was prejudiced by the juror's comments.

Inasmuch as Bernacet failed to carry his burden of proof to the trial court that the juror's statement amounted to gross misconduct and prejudice, we conclude the trial court erred in granting the motion to correct errors and in granting a new trial. Thus, we reverse and remand with instructions to reinstate the jury's verdict.[1]

Reversed and remanded.

BROOK, C.J., and SHARPNACK, J., concur.

---

1. Bernacet filed a Motion to Strike Portions of the Reply Brief of the Appellant and Supplemental Transcript on October 20, 2003, alleging that Naumoski failed to designate the facts in relation to the voir dire and thus raised a new issue in the reply brief contrary to the dictates of Appellate Rule 46(C). Inasmuch as the transcript of the voir dire was not submitted with the record or appendix, we grant the motion to strike the materials that were not part of the original filing, specifically, pages 20–21 of the brief and the transcript of the voir dire. Even so, had we considered this material, our disposition of this case would remain unchanged because Bernacet has failed to prove that the juror's statement amounted to gross misconduct or prejudice.