# Commonwealth *v.* Filer, Appellant.

*Practice, Supreme Court—Appeals—Assignments of error—Defective assignments.*

1. Assignments of error which are in the language of the pleader and do not contain those portions of the charge about which complaint is made are defective and will not be considered on appeal

2. An appeal is necessarily from some definite action of the court below, such as a judgment, decree or final order, and when it is sought to reverse such judgment, decree or final order, upon certain specific grounds, it is necessary to set out in the assignments of error the precise matters upon which the appellant relies to ask for a reversal.

3. If some parts of the charge be erroneous or inadequate, or biased and prejudicial, it is necessary to take an exception, and when an appeal is taken, the assignment must contain the exact language of the court complained of and show that an exception was taken and allowed.

4. When a motion for a new trial is refused, and this is relied on to ask for a reversal of the judgment, the order of the court dismissing the motion must be set out in the assignment.

5. When the admission or rejection of testimony is assigned for error, the assignment must show the purpose of the offer, the ruling of the court and the exception.

*Criminal law—Murder—Evidence—Murder of the first degree.*

6. On the trial of an indictment for murder, it appeared that deceased, who was an automobile hackman, left his garage with one

passenger at 10 o'clock on the night of the crime, and was found the next morning at 4 o'clock badly beaten and robbed and died shortly thereafter without naming his assailant. An iron bolt wrapped in paper was found near the body of the deceased. A witness testified that he met defendant near the scene of the crime, on the afternoon of the day before deceased was found, and that defendant suggested a robbery and showed the witness a package similar to the one containing the bolt. Another witness 'testified that defendant, on the same day, suggested a robbery and that he had a package under his arm similar to the bolt. A third witness identified defendant as the passenger whom deceased had taken out in his automobile. The wound of which deceased died appeared to have been inflicted by a weapon similar to the bolt. *Held*, that a verdict of guilty of murder of the first degree was warranted by the evidence.

*Practice, O. T.—Motion for new trial—Alleged misconduct of jurors—Judicial discretion—Affidavits of jurors explaining verdict.*

7. In such case the refusal of a new trial was not an abuse of judicial discretion, where though it appeared that the jury, while taking a walk under the custody of an officer, viewed, in the absence of defendant and his counsel, a location mentioned by defendant in his testimony, there was nothing to indicate that defendant was prejudiced thereby.

8. Affidavits of jurors made after the trial by way of explanation as to what influenced them in reaching a conclusion constitute no part of the record.

Argued March 1, 1915. Appeal, No. 62, Oct. T., 1914, by defendant, from sentence of O. & T., Westmoreland Co., Nov. T., 1914, No. 62, on verdict of guilty of murder of the first degree in case of Commonwealth of Pennsylvania v. H. E. Filer. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Indictment for murder. Before McCONNELL, J.

From the record it appeared that:

On the night of August 28th, 1914, Jacob K. Blank, an automobile hackman, left the Standard Garage, Greensburg, with one passenger, at about 10 o'clock p. m.

He was found later badly injured and beaten on the head, apparently with a blunt instrument, at about 4

o'clock a. m., August 29th, by two watchmen, along the roadside about three-quarters of a mile from Greensburg, and near the Hempfield Coal Company's Slope. He was brought to the Westmoreland Hospital at Greensburg, and died on August 29th, at 6 o'clock p. m., without giving the name of his assailant.

The pockets of the clothes of the injured man were turned inside out and some of the contents had been taken and carried away. An iron bolt about a foot long, wrapped in paper, was found not far from the place where the injured man was lying when found. Some three days later a pocket book was found along the Pennsylvania Railroad about one mile in a westerly direction from the scene of the crime.

Edward Miller, a negro tramp, testified that he met the defendant along the Pennsylvania Railroad, on the afternoon of August 28th, some three or four miles west of the scene of the crime; that the defendant suggested to him the commission of a crime similar to the holding up of the deceased, and showed a package similar to the bolt found at the scene of the crime.

Emmet Stivers, an ex-convict, testified that he met the defendant at the Arch at Brushton avenue, Greensburg, on the afternoon of August 28th, 1914, and that the defendant suggested to him the commission of a robbery similar to the holding up of the deceased, and that the defendant had a package under his arm similar to the package containing an iron bolt, found at the scene of the crime.

James Whittaker identified the defendant as the passenger who left the garage in an automobile with the deceased the night of August 28, 1914.

Verdict of guilty of murder · of the first degree on which sentence of death was passed. Defendant appealed.

*Errors assigned* were as follows:

The court erred in answering defendant's second point, which point and answer are as follows:

Second: The burden of proof that the defendant, H. E. Filer, is guilty of the crime alleged in the bill of indictment, is on the Commonwealth and that burden never shifts.

Answer: That is true, in some sense a setting up of an alibi is an affirmative defense, yet it relates to the case of the Commonwealth, after you have considered all there is about that along with the other evidence the question still comes home to you whether you can see beyond a reasonable doubt whether the defendant is guilty.

The learned court erred in his charge in emphasizing the words "set up" and "of course" in the sentence [We have a defense set up here that of course denies that the defendant committed this offense].

The learned court erred in emphasizing the testimony of James Kenney about the defendant's arm being wrapped up [that his arm was wrapped up, and that he showed some money, forty dollars, and some more, perhaps ten dollars, and said it was the easiest money he ever made and so on. The deduction that the Commonwealth desires you to draw from is that he had possibly been injured in the perpetration of this offense.].

The charge of the court was inadequate in that the learned court failed to call the attention of the jury to the fact that Alex Walker testified that he saw the defendant about 11 o'clock on the evening of August 28, 1914, and did not notice that there was anything wrong with the defendant's hands, and that they were not wrapped up.

The charge of the court was inadequate in that the learned court failed to call the attention of the jury to the fact that it was the uncontradicted testimony that both the deceased and the defendant were well acquainted, and that the deceased, when he was conscious and described the assault made on him, did not name the defendant as his assailant.

The learned court erred in that the charge as a whole was not a fair and adequate presentation of the case.

The learned court erred in refusing to grant the defendant a new trial notwithstanding the evidence of the misconduct of the jury in visiting the Arch at Brushton avenue, Greensburg, after testimony in the case was closed and without permission of the court or notice to the defendant or his counsel, which things were made known to the court by depositions taken subsequently thereto.    (See affidavit of James Caldwell, one of the officers in charge of the jury, also the affidavits of jurors Frank McDowell, B. F. Kuhn, West McCoy and Alvin Buckley.)

The court erred in not finding that the defendant had been prejudiced by the misconduct of the jury before referred to, and that he, the defendant, had been thereby deprived of the fair trial he is entitled to.

The court erred in refusing the admission of the affidavits of jurors as to their misconduct.

The learned court erred in not finding that the constitutional rights of the defendant to be heard by himself and counsel, to demand the nature and cause of the accusation against him and to meet the witnesses face to face, were violated by the unauthorized view of certain premises by the jury.

*Ralph D. Hurst* and *Thomas H. Greevy,* for appellant.

*C. Ward Eicher,* with him *C. E. Heller* and *Geo. E. Barron,* for appellee.

Opinion by Mr. Justice Elkin, April 19, 1915:

In this case there are ten assignments of error and not one of them in proper form.    This shows carelessness in preparation or disregard for what has been repeatedly stated by courts of review in considering the proper practice as to the form of assigning errors.    No exception was taken to what the trial judge said in affirming de-

fendant's second point, and the court below could not know, nor can we here, just what was complained about. The point was affirmed with general observations as to the burden of proof in murder cases. The second assignment is without merit from every point of view. There is nothing in the third assignment to indicate whether the matter complained of was in the language of the trial judge or not, but assuming that it was, the record does not show that this testimony was unduly emphasized or that it was not properly commented upon. This assignment is likewise without merit. The fourth, fifth and sixth assignments allege that the charge of the trial judge was inadequate in respect to the matters therein set forth. All of these assignments are in the language of the pleader and do not contain those portions of the charge about which complaint is made. We have said over and over again that this is improper practice and that such assignments will not be considered on appeal: Merritt v. Poli, 236 Pa. 170; Witmer v. Bessemer & Lake Erie R. R. Co., 241 Pa. 112; Prenatt v. Messenger Printing Co., 241 Pa. 267.

The seventh, eighth, ninth and tenth assignments are all open to this general objection. An appeal is necessarily from some definite action of the court below, such as a judgment, decree or final order, and when it is sought to reverse such judgment, decree or final order, upon certain specific grounds, it is necessary to set out in the assignments of error the precise matters upon which the appellant relies to ask for a reversal. If some parts of the charge be erroneous, or inadequate, or biased and prejudicial, it is necessary to take an exception, and when an appeal is taken, the assignment must contain the exact language of the court complained of and show that an exception was taken and allowed. When a motion for a new trial is refused, and this is relied on to ask for a reversal of the judgment, the order of the court dismissing the motion must be set out in the assignment. When the admission or rejection of testimony is

assigned for error, the assignment must show the purpose of the offer, the ruling of the court, and the exception. In the present case all of these essential requirements have either been ignored or disregarded. In several recent cases from different parts of the state we have noticed what seems to be an increasing tendency toward carelessness in this direction and for this reason we have deemed it proper to direct the attention of counsel to what has been said upon this question in the cases above cited and in the following cases: Lindsay v. Dutton, 227 Pa. 208; Yerger v. Hunn, 231 Pa. 245; Chisholm v. Thompson, 233 Pa. 181; McGonnell v. Pittsburgh Railways Co., 234 Pa. 396; Brown v. Central Penna. Traction Co., 237 Pa. 324; Munkkonen v. Trevaskis, 238 Pa. 365; Hardy v. Lehigh Valley R. R. Co., 240 Pa. 454; Malin v. James, 244 Pa. 336; Coates v. Young Woman's Christian Association of Philadelphia, 245 Pa. 426. Many other cases to the same effect might be included in the list, but enough have been cited to indicate how important it is to observe the rules of practice which have been adopted to facilitate the expeditious and orderly review of cases on appeal. It is the duty of the practitioner not only to know the rules but to observe them in the preparation of paper books. In the case at bar the senior counsel who assisted in the argument here lived in a distant county, while the trial took place in another jurisdiction, and no doubt he did not have the opportunity to carefully examine the record, assignments and proofs during the preparation of the paper book, but the fact still remains without explanation that the assignments are defective and not in compliance with the established rules of practice.

However, a human life is involved, and without regard to the defective assignments of error, we have carefully examined the entire record for the purpose of determining whether appellant had a fair and impartial trial under the law. Our conclusion is that he had and that he was not denied any legal right to which he was en-

titled. The trial lasted for three full days before the case was submitted to the jury in a most careful and painstaking charge. The evidence, which covers almost 300 pages of the printed record, was ample to sustain the verdict; indeed a careful reading of this record will convince any unbiased mind that no other verdict could have been rendered without disregarding the overwhelming weight of the testimony. The trial was conducted in conformity with the best traditions of our courts in the administration of the criminal law. No serious objection is made to anything that occurred in the court during the course of the trial. The defendant was given every opportunity to defend against the crime with which he stood charged in the indictment. The Commonwealth assumed the burden of proving him guilty beyond a reasonable doubt, and the trial judge carefully and correctly charged the jury as to his rights under the law. After mature deliberation each of the jurors when polled made answer in open court that the defendant was guilty of murder of the first degree. Nothing disclosed by the record when the jurors were discharged from further consideration of the case at the conclusion of the trial would justify a reversal here.

It is strongly urged for appellant that the court below erred in overruling the motion for a new trial. Ordinarily this is a question within the sound discretion of the trial judge and the refusal of such a motion does not constitute reversible error unless there has been a clear abuse in the exercise of that discretion. In the present case the assignment to sustain this contention is defective in form as will appear from an examination of the above cited cases and the appeal might very properly be dismissed on this ground alone. But upon the merits we are in accord with the reasons clearly stated in the opinion of the learned court below refusing to grant a new trial. The affidavits of the four jurors made after the trial by way of explanation as to what influenced them in reaching a conclusion constitute no part of the

record: Alexander v. Com., 105 Pa. 1. The learned court below very properly refused to consider the facts stated therein as evidence to sustain the motion for a new trial. The affidavits made by some of the jurors after trial and recording of their verdict would be fraught with most dangerous consequences: Smalley v. Morris, 157 Pa. 349. The rule is very clearly expressed in 2 Thompson on Trials, section 2618, wherein it is stated:

"Upon grounds of public policy courts have been universally agreed upon the rule that no affidavits, depositions or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what ground it was rendered, or to show a mistake in it."

This rule applies to criminal as well as to civil cases. In many jurisdictions, including our own, it has been held that the affidavits of jurors may be admitted to show that the jury were not improperly influenced, or that they had not been guilty of misconduct, but affidavits of this character have been admitted in rebuttal to disprove charges of misconduct on the part of the jury. This is a very different thing from allowing jurors to impeach their own verdict by affidavits intended to show their own misconduct.

The affidavit of the officer in charge of the jury in substance states that during the time he had taken the jurors out for exercise in the morning, they had stopped at a point near the railroad and viewed a location which the defendant had mentioned in his testimony and that this was done in the absence of appellant and his counsel. The affidavits of the jurors being excluded, the facts stated in the affidavit of the officer were the only ones brought to the attention of the trial judge, not included in the record proper, in passing upon the motion for a new trial. There was nothing in this affidavit to indicate that the defendant was injured or prejudiced by anything the jurors did at that time, and the general rule is that a new trial will not be granted unless it appears that the alleged misconduct was prejudicial to the rights

of the accused: 12 Cyc. 717. Such matters rest largely in the discretion of the trial judge: Alexander v. Com., 105 Pa. 1; Com. v. Manfredi, 162 Pa. 144. The jury did not view the scene of the crime, and there was no question in issue that could be decided by inspecting the location where the jurors stopped for a few minutes on their morning walk in taking exercise while in charge of the proper officer of the court. Under these circumstances we do not feel warranted in holding that the learned court below abused its discretion in finding the alleged misconduct of the jurors not to have deprived the defendant of any legal right and in refusing to grant a new trial on this ground. On the other hand we are convinced from a careful reading of the record that the defendant had a fair and impartial trial and that the verdict is sustained by the convincing weight of the testimony.

Judgment affirmed and record remitted for the purpose of execution.