## Commonwealth v. Zito

*L. E. Enterline*, district attorney, and *Harold Watkins*, for Commonwealth. *William C. Devitt* and *Z. F. Rynkiewicz*, for defendant.

HOUCK, J., July 24, 1933.—Defendant was indicted and tried for involuntary manslaughter and for operating a motor vehicle while under the influence of intoxicating liquor. He was convicted of involuntary manslaughter but acquitted of the latter charge. He moved in arrest of judgment and for a new trial, assigning six reasons. The first five reasons have been abandoned, and the sixth only is pressed in support of the motion. The sixth reason is that the verdict was based on prejudice and on misconduct of the jury, in that the jury, while deliberating on its verdict, secured newspapers wherein the defendant was reported as being a fugitive from justice in another jurisdiction where he was charged with a number of serious offenses.

In support of his motion, the defendant took depositions and called as witnesses four of the jurors and one of the tipstaves who had charge of the jury. The testimony of the four jurors was received over the Commonwealth's objection that their testimony was incompetent to impeach their verdict or to disclose what transpired during their deliberations. The Commonwealth now insists that this evidence is incompetent, is not a part of the record, and must be disregarded. There is no doubt that the Commonwealth's position is correct. It is clearly against public policy to admit such evidence. A relaxation of the rule would subject jurors to the importunities and inquiries of interested parties

after the verdict and involve the jurors in controversies among themselves as to what actually occurred in the jury room, with a possible tendency to perjury: Commonwealth v. Bergdoll, 55 Pa. Superior Ct. 186, 194. "The affidavits of the four jurors made after the trial by way of explanation as to what influenced them in reaching a conclusion constitute no part of the record: Alexander v. Commonwealth, 105 Pa. 1. The learned court below very properly refused to consider the facts stated therein as evidence to sustain the motion for a new trial. The affidavits made by some of the jurors after trial and recording of their verdict would be fraught with most dangerous consequences: Smalley v. Morris, 157 Pa. 349. The rule is very clearly expressed in 2 Thompson on Trials, section 2618, wherein it is stated:

" 'Upon grounds of public policy courts have been universally agreed upon the rule that no affidavits, depositions or other sworn statement of a juror will be received to impeach the verdict, to explain it, to show on what ground it was rendered, or to show a mistake in it.'

"This rule applies to criminal as well as to civil cases. In many jurisdictions, including our own, it has been held that the affidavits of jurors may be admitted to show that the jury were not improperly influenced, or that they had not been guilty of misconduct, but affidavits of this character have been admitted in rebuttal to disprove charges of misconduct on the part of the jury. This is a very different thing from allowing jurors to impeach their own verdict by affidavits intended to show their own misconduct": Commonwealth v. Filer, 249 Pa. 171, 178. In this State, jurors are incompetent to give evidence to impeach their verdict in any way: Commonwealth v. Kosh, 305 Pa. 146, 158; see also Lessee of Cluggage v. Swan, 4 Binn. 150; Stull v. Stull, 197 Pa. 243; Commonwealth v. Miller, 4 D. & C. 335; Commonwealth v. Wilson, 4 D. & C., 552.

Disregarding the depositions of the four jurors, all that remains is the deposition of the tipstaff to the effect that he delivered to the jury room two newspapers, which were offered in evidence and which will be referred to later. Immediately after the jury was sworn, the court, on motion of the district attorney, directed that the jury be confined during the trial. The case was concluded some time after noon on Friday, January 13, 1933. The jury then retired to deliberate. About 5 o'clock that evening they requested newspapers, and the tipstaff furnished them with a copy of the Pottsville Republican and the Pottsville Journal. About 7 o'clock these newspapers were removed from the jury room. The jury failed to reach a verdict by Saturday morning and sent two communications to the trial judge requesting that they be discharged. About 11:55 o'clock on Saturday morning the jury was brought into court, their request to be discharged was refused, and they were directed to continue their deliberations. They retired to the jury room and agreed upon their verdict at about 4 o'clock on Saturday afternoon.

The newspapers in question, in addition to commenting on the progress of the trial, contained statements to the effect that the defendant had been arrested and placed in the county prison on Thursday night on a bench warrant of 11 years' standing, following advices received from the District Attorney of Dauphin County. This officer, it was said, sent a detainer, through the sheriff, for Zito on charges of highway robbery, impersonating an officer, obtaining money under threats, and being a fugitive from justice. It was also said in the articles that, according to the information lodged, the defendant, with four other men, had been arrested in Dauphin County in 1921; that the four were convicted and served 9 months, and that the defendant evaded the jurisdiction; and that his whereabouts were unknown until press reports of his trial in Schuylkill County were read in Dauphin County.

The defendant contended on the argument that the jury's verdict was based upon evidence which was not introduced during his trial, to wit, the newspaper articles. These articles were not evidence, and certainly the jury understood that they were not evidence. Consequently, defendant's contention must rest upon the sole proposition that the jury must have been prejudiced by the newspaper articles; that their verdict must have been influenced by them; and that the jury's conduct in reading the articles entitles him to a new trial. While there is no competent evidence on the point, we may safely assume that the jury read the newspaper accounts, but there is not a word of evidence that their verdict was influenced in the slightest degree by these published articles. The four jurors who were called to testify said specifically that they were not influenced by the articles in question, and there is no evidence that any other juror was influenced by them. Their evidence that they were not influenced by the newspapers is the only evidence elicited from them which is competent, because a juror may testify that he was not improperly influenced: Commonwealth v. Filer, supra. We might safely rest the disposition of this motion on the ground that no improper influence has been shown, but, giving the defendant the advantage of every doubt, we have carefully read the articles and find nothing in them which would naturally tend to prejudice a conscientious juror.

The newspaper accounts did not charge that the defendant was convicted of crime. They simply recite the fact of his arrest and the charges laid against him. The jury knew, because it had been told specifically in the charge, that every defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt. Hence, they knew that the mere arrest of defendant did not establish his guilt of the crimes charged to have been committed in Dauphin County. While the granting of a new trial for the cause assigned rests in the discretion of the trial court, and each case must be decided according to the surrounding circumstances, there are a number of appellate decisions which throw light on the present inquiry: see Commonwealth v. Valverdi, 218 Pa. 7, where the dissenting opinion gives an indication of the extent to which the newspaper article went; Commonwealth v. Deutsch, 72 Pa. Superior Ct. 298; Wilson et al. v. Consolidated Dressed Beef Co., 295 Pa. 168, 178. In the last cited case, the newspaper stated the amount named in plaintiff's statement of claim. Had the statement been made in open court by plaintiff's counsel, it would have been cause for the withdrawal of a juror. The Supreme Court said: "Except where the publication is of a very damaging character, or inspired by a party to the suit, of which there is not the slightest suggestion here, it would form an unfortunate precedent to make it the basis of a mistrial. Jurors must and doubtless can be depended upon to try cases according to the evidence regardless of casual statements in the daily press."

"If we are to continue to have faith in our jury system, it must rest on the belief that when men of average intelligence and integrity have solemnly sworn to be guided in their deliberations by the evidence produced and that alone, there will be enough of firmness and stability of mind on their part to prevent them being swerved from the line of their duty by the vague unsworn statements of anyone, who does not share the responsibility which has been assumed by the jurors themselves": Commonwealth v. Deutsch, supra, p. 316.

The crime here charged is a misdemeanor. The jury was kept intact during the trial because of certain information communicated to the trial judge indicating that an attempt was being made to reach certain of the prospective jurors for improper solicitation. Were it not for this, the jury would have been separated during the trial and would have had access to all the newspapers, and, had the case not concluded on Friday, they would have had access

to the Friday evening papers. If new trials are to be granted because what the jurors read in the newspapers is likely to influence them, then in this modern day it will be virtually impossible ever to conclude a criminal case of more than passing interest without confining the jury under the same strict procedure as prevails in trials for murder: see Commonwealth v. Grotefend et al., 85 Pa. Superior Ct. 7, 12. The defendant relies upon Mix v. North American Co., 209 Pa. 636, the facts of which are in no way similar to the facts here involved.

On November 26, 1932, defendant was in a restaurant in Pottsville between 6:15 and 7:20 p. m. While there, he admittedly had two drinks of liquor. He then proceeded to drive his automobile to Ashland, and on the way he collided with another car in which John Schultz was a passenger. Schultz was so badly injured that he died on November 28, 1932. It is unnecessary to review the evidence upon which the defendant was convicted. In our judgment, he was properly convicted, and any other result would have been a miscarriage of justice. He received a fair and impartial trial, as evidenced by the fact that he rests his motion for a new trial upon the single circumstance already discussed. There is not a word of evidence, we repeat, to show that the jury was influenced in the slightest degree by the newspaper articles. The jurors who testified said specifically that the verdict was rested upon the evidence and on that alone, and there is nothing in the articles themselves which would lead us to conclude that the only natural and probable effect of them was to influence the jury adversely to the defendant. The surrounding circumstances show that the articles had no such effect. They were read on Friday evening before 7 o'clock. The jury was still deadlocked at noon on Saturday. They finally reached a verdict after the court refused their request to be discharged. It follows that the only reason pressed in support of the motion for a new trial is without merit, and the motion must be overruled.

And now, July 24, 1933, the motions in arrest of judgment and for a new trial are overruled, and the defendant is directed to appear for sentence on Monday, September 11, 1933, at 10 a. m.

From M. M. Burke,Shenandoah, Pa.