Burke, J.
Defendant was indicted for, and convicted of, killing her daughter. .At the trial the People established that the child died of strangulation within two or three hours of her last meal. The body was found at about 2:00 p.m;., on July 14, 1965, and an autopsy determined that death occurred approximately 8 to 24 hours prior to discovery. Two of the People’s witnesses, Sophie Earomirski and Joseph Rorech, presented substantially all of the evidence which connected defendant to the crime. The former testified that at about 2:00 a.m., on July 14, 1965, she saw defendant carrying a bundle and holding the hand of a little boy; she was accompanied by a man. Defendant’s companion took the bundle and threw it into an automobile, and Mrs. Earomirski, from her third floor window across the street, heard defendant say, “ My God, don’t do that to her.” Mr. Rorech testified that at a subsequent time defendant admitted to him, “ Joseph, please forgive me, I killed her.”
Although defendant raised several alleged errors in the Appellate Division, reversal was predicated on only one — an unauthorized visit by three jurors to the neighborhood which was the subject of Mrs. Earomirski’s testimony—and was based on our decision in People v. De Lucia (20 N Y 2d 275). Leave to *323 appeal to this court was granted on the People’s application. They argue that reversal is mandated only when prejudice to the defendant is shown and that, as found by the Trial Justice, such prejudice is absent herein. They also argue that the evidence is legally sufficient to establish defendant’s guilt beyond a reasonable doubt.
After the trial but before the imposition of sentence, defendant moved, on the basis of a juror’s affidavit, to set aside the verdict because members of the jury had made an unauthorized visit to the street on which Sophie Earomirski lived. A hearing was held, and the juror, Samuel Ehrlich, testified that, after Mrs. Earomirski had testified, he wanted to see that area. He went there between 1:00 and 2:00 a.m. Ehrlich further testified that his visit did not influence his opinion.
Another visit was made by Ehrlich and two other jurors, Harry Tunis and Irving Furst, at about 5:30 p.m.
During the jury’s deliberations the lighting in the area was discussed in “ small talk ” and, according to Ehrlich, someone mentioned that the area was well-lit. Another juror, Philip Seidman, testified that the subject was discussed.
During the length of the trial, the jurors were never admonished not to visit any place which had been the subject of testimony. Ironically, after Mrs. Earomirski had testified, defense counsel requested that the court arrange a controlled visit to the area. The court denied the visit as unnecessary.
In People v. De Lucia, this court held: “ In this type of case, proof of the fact of the unauthorized visit is sufficient to warrant a new trial without proof of how such visit may have influenced individual jurors in their juryroom deliberations. Such a visit, in and of itself, constitutes inherent prejudice to the defendants.” (20 N Y 2d 275, 280 [emphasis supplied].) Appellant’s attempt to distinguish Be Lucia fails to comprehend the nature of the decision in that case. Although the affidavit averred that the jurors had re-enacted the crime, we did not predicate our decision on actual prejudice. That discussion merely demonstrates one of the manifest evils of an unauthorized visit. Since Be Lucia was in the court on mere allegations, a hearing was ordered, and the afore-quoted statement indicates the quantum of proof *324 which would mandate a new trial. The defendants were not required to establish prejudice.
Moreover, our decision in People v. Sher (24 N Y 2d 454) should not be construed as modifying Be Lucia (supra). There, unlawful communications made to jurors were disclosed to the court during the trial and prior to deliberation. After examining the jurors, the trial court was satisfied that the impropriety would not affect their verdict. We held that the pre-deliberation examination was sufficient to “ sterilize ” the jury. The jury visit herein was not disclosed until after verdict. Without the benefit of a judicial admonition, the jurors, although not consciously affected by the visit, would not make the specific effort to disregard it. Thus, no court instruction was made to counteract or “ sterilize ” any possible subconscious effect.
The attempt to distinguish the view made herein from one of the scene of a crime is also without merit. Mrs. Earomir ski’s ability to see and hear the events to which she testified depended very much on the lighting in the area and the distances involved. And the credibility of her testimony is essential to the prosecution’s case. The Legislature perceived the evil in such a view and directed court supervision of views of the place where the crime is alleged to have been committed or where ‘ ‘ any material fact occurred ” (Code Crim. Pro., § 411). The statutory inclusion is sound, and we ought not to make a tenuous distinction.
Finally, appellant argues that the error is harmless. Assuming that such a determination is not precluded by our holding in Be Lucia, the question is nevertheless moot. Although, as the People argue, the evidence is legally sufficient to sustain the verdict of guilt, it was not so overwhelming that we can say, as a matter of law, that the error could not have influenced the verdict (Harrington v. California, 395 U. S. 250; Chapman v. California, 386 U. S. 18). Only two witnesses gave evidence which connected defendant directly with the crime. Rorech, of course, testified that defendant confessed to the slaying, and that testimony, together with that of the coroner, is sufficient to establish a prima facie cáse. (Code Crim. Pro., § 395.) But that testimony was seriously challenged, and the witness was subjected to searching cross-examination. Mrs, Earomir ski was the other witness who implicated defendant, and it is the value of her testimony which may have been affected by the improp *325 riety. Given such limited evidence, we cannot find the error harmless beyond a reasonable doubt.
Accordingly the order of the Appellate Division should be affirmed.
Chief Judge Fuld and Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur.
Order affirmed.