STATE OF NORTH CAROLINA v. WILLIAM EARL FARRIS

No. 712SC737

(Filed 15 December 1971)

1. **Constitutional Law § 30— speedy trial — 47-day delay between offense and arrest**

    A delay of 47 days from the date of the alleged offense to the issuance of the warrant for defendant's arrest does not violate defendant's right to a speedy trial.

2. **Criminal Law § 89— impeachment of witness — identification of defendant — arrest of innocent person**

    Where the State's witness made positive visual identification of defendant during the trial, it was proper for the trial court to prohibit defendant from cross-examining the witness with respect to the issuance of a warrant for the arrest of an innocent person during the course of the same investigation which led to the present charge against defendant.

3. **Criminal Law § 130— juror's unauthorized view of crime scene — harmless error**

    In a prosecution for the sale of heroin, the fact that, during an overnight recess after the jury had begun deliberating, a juror rode by the house in which the alleged sale was made, *held* not to warrant a new trial.

APPEAL by defendant from *Rouse, Judge,* 24 May 1971 Session of BEAUFORT Superior Court.

Defendant was tried and convicted on a bill of indictment alleging the unlawful sale of heroin, a narcotic drug, to an undercover SBI agent.

Pertinent evidence of the State tended to show: On or about 27 January 1971 SBI Agent William H. Thompson, acting as an undercover agent, went to the home of defendant at 820 Callis Avenue in Washington, North Carolina, and there purchased twenty-three bindles of a white powdery substance for the sum of $90.00. Later chemical analysis on two of the bindles revealed they contained the narcotic drug heroin. The warrant for defendant's arrest was issued on 15 March 1971.

Defendant denied that Agent Thompson had ever been to his home or purchased anything from him. From judgment imposing prison sentence of three to five years, defendant appealed.

---

---

*Attorney General Robert Morgan and Associate Attorney Benjamin Hunt Baxter, Jr., for the State.*

*Paul and Keenan by James E. Keenan for defendant appellant.*

BRITT, Judge.

[1]  Defendant assigns as error the denial of his motion to quash or dismiss the indictment on the ground that he had been denied his right to a speedy trial. Defendant contends that the delay of some 47 days from the date of the alleged offense, 27 January 1971, to the issuance of the warrant on 15 March 1971, was highly prejudicial to him.

We find no merit in this assignment of error. Our Supreme Court in an opinion by Sharp, Justice, said in *State v. Johnson,* 275 N.C. 264, 277, 167 S.E. 2d 274, 283 (1969): "We here hold that when there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State; and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed."

In *Johnson,* there was a *purposeful* four years delay. That is to be distinguished from a delay of 47 days where there was no oppressive delay on the part of the State but the time lapse was necessary to promote responsible police investigation involving an undercover operation in the local area. The court went on to say in *Johnson, supra,* at page 273: "Neither a defendant nor the State can be protected from prejudice which is an incident of ordinary or reasonably necessary delay. The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort. *Pollard v. United States,* 352. U.S. 354, 1 L. Ed. 2d 393, 77 S.Ct. 481 (1957). Obviously, the authorities should not bring formal charges against a suspect until they have probable cause to believe they can prove him guilty; and—in a proper case—a reasonable delay may be justified to protect and to promote further responsible police investigation."

We hold that the delay of 47 days under the facts of this case was not unreasonable and did not constitute a denial of a speedy trial.

[2] Defendant's second assignment of error relates to the sustaining of objections of the State which prohibited defendant from cross-examining a State's witness or from introducing evidence about a warrant issued for an innocent person during the course of the same investigation that led to the present charge against defendant. Defendant sought to impeach a State's witness on a mistaken identification of a person by a name supplied by independent third party sources in another instance in the undercover enforcement program. In the instant case the witness made positive visual identification of defendant at the trial, thus negating any chance that the independent sources had supplied the wrong name. In *State v. Hunsucker*, 3 N.C. App. 281, 285, 164 S.E. 2d 507, 510 (1968) where cross-examination of a State's witness concerning his failure to recognize a second robber was not permitted this court stated: "The testimony sought to be elicited by this examination was immaterial upon the question of the witness's ability to recognize this defendant, and its exclusion cannot, therefore, be held to be error." Thus, in this case since the evidence sought to be admitted was irrelevant it was properly excluded as not bearing on the issues involved. *Corum v. Comer*, 256 N.C. 252, 123 S.E. 2d 473 (1962).

[3] Defendant's last assignment of error is to the denying of defendant's motion for a new trial based on the viewing of the place of the alleged sale of narcotic drugs by one of the jurors during an overnight recess after the jury had begun deliberating but before the return of the verdict. The juror involved never identified the house in question, but did ride by it on the street on which the house was located.

The legal principles applied to juror misconduct are well summarized in *State v. Sneeden*, 274 N.C. 498, 504, 164 S.E. 2d 190, 194 (1968) :

"Motions for a mistrial or a new trial based on misconduct affecting the jury are addressed to the discretion of the trial court. *In re Will of Hall*, 252 N.C. 70, 113 S.E. 2d 1. Unless its rulings thereon are clearly erroneous or amount to a manifest abuse of discretion, they will not be

disturbed. *Stone v. Baking Co.,* 257 N.C. 103, 125 S.E. 2d 363; *O'Berry v. Perry,* 266 N.C. 77, 145 S.E. 2d 321; *Keener v. Beal,* 246 N.C. 247, 98 S.E. 2d 19. 'The circumstances must be such as not merely to put suspicion on the verdict, because there was opportunity and a chance for misconduct, but that there was in fact misconduct. When there is merely matter of suspicion, it is purely a matter in the discretion of the presiding judge.' *Lewis v. Fountain,* 168 N.C. 277, 279, 84 S.E. 278, 279."

In 24 C.J.S., Criminal Law, § 1449 (14), p. 136, we find: "View. While the taking of an unauthorized view has been held to constitute grounds for a new trial, generally, the mere fact that the jury made an unauthorized visit to the place of the crime is not ground for a new trial, where they were not guilty of any misconduct while there and could not have acquired any improper information that might have influenced their verdict; and this presents a question largely for the determination of the trial court, in the exercise of a sound discretion." In *State v. Boggan,* 133 N.C. 761, 46 S.E. 111 (1903), the mere viewing of the scene of the crime was held not to be receiving evidence other than that offered at trial.

In light of the authorities cited above, we hold that the question of juror misconduct was within the sound discretion of the trial judge and there has been no showing of an abuse of that discretion.

Having found no merit to any of defendant's assignments or error, they are all overruled.

No error.

Judges BROCK and VAUGHN concur.