Commonwealth *v.* Price, Appellant.

Argued March 27, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and SPAETH, JJ.

*David E. Auerbach,* Assistant Public Defender, for appellant.

*Philip J. O'Malley,* Assistant District Attorney, with him *Ralph B. D'Iorio,* Assistant District Attorney, and *Stephen J. McEwen, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 21, 1973:
Judgment of sentence affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

Appellant contends that the trial court erred in not declaring a mistrial upon learning that one juror had made an unauthorized visit to the scene of the crime and then conveyed his impressions to several other jurors.

Appellant and a codefendant were tried before the Honorable John V. DIGGINS in Delaware County on charges of burglary, larceny, receiving stolen goods, and aggravated robbery. On the evening of January 24, 1971, two or three men entered a Honeysuckle Farms Ice Cream Parlor in Chester and robbed the employees at gunpoint. Shortly thereafter, the police apprehended the appellant, his codefendant, and a third man and returned them to the scene of the crime. The appellant and his codefendant were indicted and tried. The Commonwealth presented all of its evidence and the jury retired to deliberate on October 20, 1971. When the jury could not reach a verdict, the judge, over defense counsel's objection, sent the jurors home that evening after instructing them not to discuss the case with anyone. The following day, the foreman of the jury in-

formed the judge that one of the jurors had visited the scene of the crime and had conveyed his impressions to several other jurors. The judge instructed the jury not to consider the unauthorized view in reaching a verdict. The jury resumed deliberations and later returned a verdict finding appellant guilty and his codefendant not guilty of the crimes charged. The jurors asserted that the view did not have an effect on their verdict.

The general rule throughout the United States has long been that it is error for a juror to make an unauthorized view of the scene of the crime; however, a new trial will only be granted where the defendant establishes that the view substantially prejudiced his rights to a fair trial. 58 A.L.R. 2d 1147 (1958). This rule has been adopted in Pennsylvania. In *Commonwealth v. Filer*, 249 Pa. 171, 94 A. 822 (1915), the jurors, without court authorization, were allowed to view a location which the defendant had mentioned in his testimony. The Supreme Court refused to grant a new trial holding: "[T]he general rule is that a new trial will not be granted unless it appears that the alleged misconduct was prejudicial to the rights of the accused. . . . Such matters rest largely in the discretion of the trial judge."[1] 249 Pa. at 179-180 (citations omitted). Accord, *Commonwealth v. Gockley*, 411 Pa. 437, 456-459, 192 A. 2d 693 (1963). The significance of an unauthorized view was most clearly expressed in a civil case, *Friedman v. Ralph Brothers, Inc.*, 314 Pa. 247, 171 A. 900 (1934): "We cannot condemn too severely the act of a juror personally viewing the place of an accident or *any matter subject to judicial investigation* which is not performed under the security and protection of the court. Such acts are improper and a juror should not

---

[1] The Court in *Filer* mentioned that the jurors had not viewed the scene of the crime, but *Filer* and its progeny indicate that the same rule applies to cases where the fact-finder improperly views the scene of the alleged wrongdoing.

only be censured for such conduct but, if necessary, punished by the court, and *if the act was of sufficient importance, a mistrial should be directed.*" 314 Pa. at 249 (emphasis added).

The trend in the United States, however, is away from the *Filer* approach. *Turner v. Louisiana,* 379 U.S. 466 (1965) emphasized the undesirability of a conviction based upon evidence which the jurors gathered outside the judicial process: "In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right cf confrontation, of cross-examination, and of counsel." 379 U.S. at 472-473. (The conviction was reversed and the case remanded.)

Courts have expansively interpreted the language in *Turner.* In *Farese v. United States,* 428 F. 2d 178 (5th Cir., 1970), the Fifth Circuit held: "It is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused of all safeguards of a fair trial. Trial jurors have no right to investigate or acquire information relating to the case outside of that which is presented to them in the course of the trial in accordance with the established trial procedure. Indeed, Mr. Justice HOLMES expressed this concept over sixty years ago in the following language: 'The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, * * *.' Patterson v. Colorado, 205 U.S. 454, 462, 27 S. Ct. 556, 558, 51 L. Ed. 879 (1907). . . . Judicial control of the juror's knowledge of the case pursuant to the laws of evidence is fundamental to the prevention of bias and prejudice. . . ." 428 F. 2d at 179-180.

Once a court decides that the jury erred in considering extrajudicial evidence in reaching its verdict, the court must determine whether or not the error was so prejudicial as to require the granting of a new trial: "[T]he courts will not speculate as to the amount of prejudice arising from information secured by a jury outside the courtroom. The right to trial by jury comprehends a fair determination of the guilt or innocence of the accused free from bias, passion, or prejudice. * * * And where error occurs which, within the range of a reasonable possibility, may have affected the verdict of a jury, *appellant is not required to explore the minds of the jurors in an effort to prove that it did in fact influence their verdict.* . . . Our courts have traditionally upheld the position that verdicts should be set aside where it is shown that the impartiality of jurors may have been affected or *where tainted material has come before the jury.*" 428 F. 2d at 180 (emphasis added) (citations omitted). Even the most diligent juror who makes every effort to "safeguard against the hazards of outside contacts" may be unconsciously swayed by such contact. *Schofield v. State,* 45 Ala. 191, 227 So. 2d 822 (1969) [State's writ of appeal denied 229 So. 2d 26 (Sup. Ct. Ala. 1969)].

Although some state courts are still applying the old *Filer* standard,[2] the best reasoned opinions of our sister states hold that a fact-finder's unauthorized view of the scene of the crime is so prejudicial as to require that the defendant receive a new trial. The New York Court of Appeals first enunciated this new trend in *People v. DeLucia,* 20 N.Y. 2d 275, 282 N.Y.S. 2d 526, 229 N.E. 2d 211 (1967). In that case several jurors went to the scene of the crime and reenacted the alleged-

---

[2] *Waye v. State,* 255 Ind. 136, 263 N.E. 2d 165 (1970); *State v. Smith,* 13 N.C. App. 583, 186 S.E. 2d 600 (1972), cert. den'd 187 S.E. 2d 586 (1973); *State v. Ferris,* 13 N.C. App. 143, 185 S.E. 2d 275 (1971), cert. den'd 186 S.E. 2d 177 (1972).

ly felonious acts. The court held that this constituted inherent prejudice to the defendants and required the grant of a new trial without examining the effect which the visit had upon the jurors. Using the reasoning which the United States Supreme Court advanced in *Parker v. Gladden,* 385 U.S. 363 (1966), the court ruled that the jurors had become "unsworn witnesses against the defendants in direct contravention of their right, under the Sixth Amendment, 'to be confronted with witnesses' against them." 20 N.Y. 2d at 279, 282 N.Y.S. 2d at 530, 229 N.E. 2d 214.[3] Later, a lower New York court cited *DeLucia* and held: "Although one seeking to set aside an adjudicatory process normally has the burden of showing essential unfairness as a demonstrable reality and not as a matter of speculation, there are situations so laden with the probability of prejudice that they are deemed inherently lacking in due process." *People v. McIntyre,* 31 A.D. 2d 964, 965, 299 N.Y.S. 2d 88, 91 (1969). But see, *People v, Crimmins,* 26 N.Y. 2d 319, 310 N.Y.S. 2d 300, 258 N.E. 2d 708 (1970). Courts should "not speculate as to the amount of prejudice arising from information secured by a jury outside the courtroom." *Farese v. United States,* 428 F. 2d at 180, for these influences may subconsciously affect a juror's thinking. *Schofield v. State,* supra. This viewpoint has been adopted in Michigan. In *People v. Eglar,* 19 Mich. App. 563, 173 N.W. 2d 5 (1969), the Michigan Court of Appeals ruled that a new trial should be granted where the trial judge sitting as a jury took an unauthorized view of the scene of the crime. The following year the same court held that a juror's unauthorized visit to the scene of the crime made him an unsworn witness against the defendant; thus, the defendant received a new trial be-

---

[3] The case was remanded, however, for a hearing to determine whether or not the jurors had actually viewed the scene of the crime.

cause his constitutional right to confront the witnesses against him was violated. *People v. Hollingsworth,* 22 Mich. App. 545, 177 N.W. 2d 687 (1970).

In the instant matter, no one can determine the precise effect which the unauthorized view had upon the jurors in reaching their verdict. The appellant's constitutional right to confront all the witnesses against him and not to be convicted on evidence gathered by a juror has been disregarded. Once such an error appears, this court should not speculate as to the impact of the wrongfully considered evidence. Only by granting a new trial can this court eliminate the possibility that the appellant was wrongfully convicted.

The judgment of the lower court should be reversed and appellant granted a new trial.

SPAULDING, J., joins in this dissenting opinion.