## BRUNER *v.* THE STATE.

CRIMINAL LAW.—*Indictment.—Manslaughter, Voluntary and Involuntary.*— An indictment for manslaughter charged, that the defendant, at, etc., on, etc., did "unlawfully and feloniously kill" the deceased, "without malice, but voluntarily upon a sudden heat," by "striking and injuring" the deceased "on the head with a stake," which the defendant then and there had and held in his hands, "of which striking and injuring the" deceased "lingered, and lingering did die."

*Held,* that the indictment is sufficiently certain in its description of the injury resulting in death.

*Held,* also, that the indictment charged the commission of *voluntary* manslaughter.

*Held,* also, that, under such indictment, the defendant can not be convicted of involuntary manslaughter.

SAME.—The unlawful and felonious killing of a human being, " without malice, but voluntarily upon a sudden heat," is voluntary manslaughter.

SAME.—Where the killing is involuntary, but in the commission of an unlawful act, it is involuntary manslaughter.

SAME.—One guilty of involuntary manslaughter can not be convicted under an indictment charging him with voluntary manslaughter.

SAME.—*Jury.*—On the trial of a defendant for manslaughter, the question, as to whether the manslaughter committed was voluntary or involuntary, is one wholly for the jury.

SAME.— *Unlawful Act.*—One who voluntarily commits an unlawful act, which unintentionally but not necessarily results in the death of another, is guilty, not of voluntary, but of involuntary, manslaughter.

From the Ripley Circuit Court.

*E. P. Ferris, W. W. Spencer* and *A. Stockinger,* for appellant.

*C. A. Buskirk,* Attorney General, and *J. O. Cravens,* Prosecuting Attorney, for the State.

HOWK, J.—The appellant was indicted for manslaughter, at the September term, 1877, of the court below.

Omitting the merely formal and introductory matter of this indictment, it charged, in substance, that the appellant, " on the 11th day of September, A. D. 1877, at said county and State aforesaid, did then and there unlawfully and feloniously kill one Bernard Koch, without malice, but voluntarily upon a sudden heat, by then and there striking and injuring him, the said Bernard Koch, upon the head with a stake, which he, the said Leo Bruner, then and there had and held in his hands, of which striking and injuring the said Bernard Koch then and there lingered, and lingering did die."

The appellant moved the court below to quash the indictment, which motion was overruled, and he excepted to this decision. Upon arraignment on said indictment, the appellant's plea thereto was " Not guilty." The cause was tried by a jury, in the court below, and a verdict was returned, finding the appellant guilty as charged in the indictment, and assessing his punishment at imprisonment in the state-prison for two years.

Appellant's written motion for a new trial was overruled, and he excepted to this decision; and his motion in arrest of judgment having also been overruled, and his exception saved to this decision, judgment was rendered by the court below on the verdict.

In this court, the appellant has properly assigned the following alleged errors of the court below:

1. In overruling his motion to quash the indictment.
2. In overruling his motion for a new trial; and,
3. In overruling his motion in arrest of judgment.

The first and third of these alleged errors may properly be considered together, as they each call in question the sufficiency of the indictment.

If we understand aright the objection of appellant's counsel to the sufficiency of the indictment, it is that the indictment does not state the character of the injuries, of which Bernard Koch lingered and died, with sufficient clearness and certainty. They say:

"We submit, that the indictment should show affirmatively that some wounds were inflicted which proved fatal, and of which wounds he died."

It seems to us, however, that this objection is not well taken. The law does not now require the same particularity, as it formerly did in such a case as this, in the description of the injuries or wounds from which death has ensued. We think that the indictment in this case is sufficiently certain and specific in the particulars complained of, and that no error was committed by the court below in overruling either the motion to quash the indictment, or the motion in arrest of judgment.

The second alleged error, properly assigned by the appellant, was the overruling of his motion for a new trial.

Before considering the questions presented by this alleged error, we think it necessary to a proper understanding of our decisions in regard to those questions, that we

should first give a brief summary of the facts of this case, as shown by the evidence.

On the 11th day of September, 1877, one Charles Sleeter, a farmer residing in Ripley county, Indiana, was engaged in threshing wheat on his farm, with a horse-power threshing-machine. He had a number of men and boys employed, assisting him in threshing his wheat; and among them was the Bernard Koch mentioned in the indictment, a man forty years old. Among the employees were two boys named Bruner, who were brothers, one Leo Bruner, the appellant in this case, aged then about seventeen years and three months, and the other Nicholas Bruner, aged then about fifteen years and five months. During the progress of their work, Bernard Koch, the deceased, was stacking straw from the machine, Nicholas Bruner was on the mow, pitching down sheaves to the machine, and the appellant stood near the machine cutting the bands of the sheaves. There were other boys on the mow with Nicholas Bruner; and, during the progress of the work, two or three eggs were thrown from the mow apparently at said Bernard Koch, one of which struck him on his leg, but by whom they were thrown, the evidence fails to disclose. Koch apparently believed that young Nicholas Bruner had thrown the egg, which hit him; and when the machine was stopped, at the hour for dinner, Koch started after Nicholas Bruner, with some remarks which indicated a purpose or a wish to punish him. The boy retreated, until he found and picked up a seasoned dog-wood stake, three and one-half inches at the but, twenty-one inches long, and tapering from the but to a point. What was said between the parties, the evidence does not show very clearly; but it would seem, that the appellant came up at this moment and "told Koch to let Nick alone, or he might get licked." When the appellant came up, Nick threw the stake down, and when the former spoke to Koch, he responded and repeated, that the appellant " had

Bruner v. The State.

better try it, if he could do it." At the repetition of these words, the appellant, who had picked up the stake thrown down by Nick, struck Koch on the left side of the head, about an inch above the ear, with the stake, and knocked him down. The skin was not broken, nor was the skull fractured by the blow, but the blood flowed at once quite freely from his left ear. He was taken that day to his own house, about three-fourths of a mile distant, in a spring wagon, over a rough road, for about one-third, and walking but with difficulty the remainder, of said distance. Neither Koch nor his family seemed to think at first that his injuries were serious, and did not send for a physician until the second day after the blow was given. He lingered along, and died on the ninth day after he received the injury. A post-mortem examination was had, at which the physicians and surgeons of the neighborhood were present, and afterward testified on the trial. While they concurred in the opinion, that the blow received by him was the primary cause of Koch's death, yet they also agreed that the wound inflicted was not necessarily mortal, if he had received proper medical attention and treatment, at the proper time. There was no external injury, no fracture of the skull, and no rupture of the blood-vessels. The indications were, that Koch had received a light blow, rather than a heavy one. The appellant was shown to have borne a good reputation prior to this transaction. He testified as a witness, in regard to his intention in striking Koch, as follows :

"My intention was not to kill him, but just to knock him down. I had no intention of killing him."

With this statement of the facts and evidence, we pass now to the consideration of some of the questions of law involved in this case. We may premise, that, under the legislation of this State, there are two kinds of homicide, each of which is denominated manslaughter. The first kind, which may be termed voluntary manslaughter, is where any person shall unlawfully kill any human

being, without malice express or implied, voluntarily upon a sudden heat; and the second kind, which may be termed involuntary manslaughter, is where any person shall unlawfully kill any human being, without malice express or implied, involuntarily, but in the commission of some unlawful act. These two kinds of manslaughter, though widely differing each from the other, are each made liable to the same punishment. 2 R. S. 1876, p. 426, sec. 8. They differ from each other in this: that, in the first kind, the unlawful killing is voluntary, that is, the killing is done by design or intention, or purposely; but, in the second kind, the unlawful killing is involuntary, that is, without any design, intention, or purpose of killing, but in the commission of some unlawful act.

In the case at bar, the indictment contained but a single count, and that charged the appellant with what we have termed voluntary manslaughter. It seems to us, however, from our reading of the evidence in this case, that it tended strongly to show that the appellant, if guilty at all, was guilty rather of what we have termed involuntary manslaughter than of the crime of voluntary manslaughter, wherewith he was charged in the indictment. At all events, it is certain, we think, that the evidence furnished so much reason for doubt of the appellant's guilt of the crime wherewith he was charged, and for belief in his probable guilt of involuntary manslaughter, in the killing of Bernard Koch, that the court below should have instructed the jury, as requested by the appellant, in regard to what constituted involuntary manslaughter, and that if they believed from the evidence that the appellant, in the killing of Bernard Koch, was guilty of involuntary manslaughter, it would be their duty to acquit him of the crime charged in the indictment.

It seems very clear to us, that the court below erred

in refusing to give the jury the instructions asked for by the appellant on these points.

The court below, of its own motion, gave the jury the following instruction:

"6th. The question of involuntary manslaughter does not enter into this case. If, as I have already stated, the prisoner intended the blow, and the blow produced death, and it was an unlawful blow, then the defendant is guilty of manslaughter voluntarily. The unlawful act necessary to constitute involuntary manslaughter is an unlawful act wherein the party killed is accidentally killed, where the killing is collateral to the act committed."

In our opinion this instruction is erroneous. The definition of involuntary manslaughter, attempted to be given in the instruction, is no improvement, we think, on the plain and simple language of the statute. In our view of the case, the court below should have instructed the jury, that it was for them, and not for the court, to determine whether or not "the question of involuntary manslaughter" entered into this case; and that, if they believed from the evidence that the appellant, in the killing of Koch, was guilty of involuntary manslaughter, then they must acquit him of the crime for which he was on trial.

But the chief error, as we understand it, lies in the evident misapprehension of the meaning of the statute. In such a case as the one charged in the indictment, the statute says that the killing must be voluntary, that is, intentional, or done purposely; but the court below instructed the jury, in the instruction cited, and more pointedly in a previous instruction, that it was not necessary to the commission of the crime charged in the indictment, "That the prisoner, when he gave the blow, intended that the result should be death." In our opinion this is not the law. *Murphy* v. *The State*, 31 Ind. 511.

Other errors of law are complained of, but as we have considered and decided the main questions involved in

this case, and as those errors may not occur on another trial of this cause, we need not consider them.

The judgment is reversed, and the cause remanded for a new trial; and the clerk of this court will notify the warden of the proper prison to return the appellant into the custody of the sheriff of Ripley county.