Filed June 7, 1884.

———————◆———————

No. 11,527.

## LUCK v. THE STATE.

CRIMINAL LAW.—*Misconduct of Bailiff and Jury.*—Where, upon the evidence, the verdict is clearly right, the fact that the bailiff, having the jury out, under order of the court, for exercise, took them past the scene of the crime with which the defendant was charged, is not sufficient ground for a new trial, where it appears that nothing occurred to influence the jury.

SAME.— *Venue.*—*Evidence.*—Where the venue of an alleged crime is laid in the county of Floyd and State of Indiana, proof that the crime occurred in the city of New Albany, Indiana, is sufficient proof of the venue.

SAME.—*Manslaughter.*—*Intent.*—*Supreme Court.*—Where, upon a violent and unlawful attack, death soon ensues, a jury may find an intent upon the part of the assailant to kill, and the Supreme Court will not interfere to reduce a verdict of voluntary manslaughter to involuntary manslaughter.

From the Floyd Circuit Court.

*J. V. Kelso* and *D. C. Anthony*, for appellant.

*F. T. Hord*, Attorney General, *F. B. Burke*, Prosecuting Attorney, and *W. B. Hord*, for the State.

HAMMOND, J.—The appellant and one John Roarke were charged in the indictment with murder in the first degree for killing Philip Oberhouser, on July 14th, 1883, in Floyd county. The appellant's separate trial terminated in his conviction for voluntary manslaughter, and his sentence to the State prison for fifteen years. His motion for a new trial was made at the proper time, and the overruling of that motion is assigned for error. The causes set out in the motion for

Luck *v.* The State.

a new trial were certain alleged misconduct of the jurors, and the insufficiency of evidence to sustain the verdict.

Affidavits, filed in support of the appellant's motion for a new trial, were to the effect that during the trial the jury were to be kept together, under the charge of a bailiff, and under his charge were to take their meals at a hotel convenient to the court-house; that at the hotel named they could have their meals in a room by themselves, and removed from all danger of outside influence; that on the second day of the trial, and thereafter until the return of their verdict, the jury, without the knowledge or consent of the appellant, took their meals at a boarding-house, more distant from the court-house than the hotel; that the keeper of the boarding-house was hostile to the appellant and his defence, and, with others of the community, was anxious for his conviction; and that at the boarding-house there were no conveniences for the jurors to take their meals by themselves, so as not to be brought in contact with improper influences; that the jury, after retiring for deliberation, left their room and were seen walking upon the streets of New Albany; that they passed by the place where the homicide, for which the appellant was on trial, was committed; that one of their number made inquiry of a boy and received from him information of the surroundings of the place; and that the jurors were not kept together when upon the streets, but were permitted to talk with persons not on the jury.

Counter affidavits of the bailiff and eleven of the jurors were filed, showing, substantially, that the court instructed that the jury should, during the trial, be taken by the bailiff to some convenient place for their meals; that they were at first taken to the hotel in question, but, becoming dissatisfied with the board there, were, during the balance of the trial, taken to the boarding-house referred to; that the boarding-house was only about twenty-five yards further than the hotel from the court-house; that at the boarding-house the jury

were furnished their meals in a room by themselves, and had no conversation or communication at any time with any person or persons not connected with the jury, and did not at any time hear any conversation between other persons relating to the case on trial, and did not come in contact with persons hostile to the appellant or his defence; that at no time during the progress of the trial, before or after their retirement to deliberate upon their verdict, was any juror separated from the others unless attended by the proper officer; that, under the instructions of the court, the jury were taken out to walk for exercise on one occasion; that on such walk they passed the place of the homicide, but had no conversation with any person concerning such place or its surroundings; that they made no examination of such place, and asked for no information respecting it; that during such walk the jury were attended by their bailiff; that they did not separate; and that nothing occurred at any time to prejudice the rights of the appellant.

The affidavits filed by the prosecution negatived the allegations of the affidavits filed in support of the appellant's motion for a new trial so far as to show that the jury were subjected to no influences whatever by others, and that they were in no respect attempted to be tampered with.

The affidavits filed in behalf of the appellant were not made by any person who pretended to have conversed or communicated with the jury, nor to have been present at any such alleged conversation or communication, nor is the name given of any person alleged to have had any conversation or communication with them.

The affidavits do not show that there was anything at or about the place of the homicide, the inspection of which could have enabled the jury to give any point to the evidence, or to gain any information that was prejudicial to the rights of the appellant. The place of the homicide seems to have been wholly wanting of a single local circumstance, the knowledge of which could have added to, or diminished, the prob-

ability of appellant's guilt. A witness, who resided on the opposite side of the street from the scene of the crime, testified that, from her room, she heard what occurred at the time of its commission, and gave the particulars of what she heard. It is claimed by counsel for the appellant that the jury, by passing the place, could see for themselves that the witness was in a position to hear what she testified to. But her evidence was not contradicted at the trial, nor was there any effort made to show that her position was unfavorable for hearing what she stated in her evidence. We think it clearly appears that the jury in passing the place did not learn any fact that could have given additional weight to the witness's testimony.

The evidence is in the record and makes out a clear case of guilt. Between ten and eleven o'clock of the night of July 14th, 1883, on one of the streets in the city of New Albany, the appellant who was in company with others, met the deceased with whom he had no previous acquaintance. An altercation, growing out of a trifling matter ensued, during which the appellant struck the deceased with his fist or something in his hand, knocking him down on the pavement, and then gave him a number of violent kicks. As soon as it could be done, the deceased was carried to the office of Dr. Easley, near by, where he died in a few moments. The doctor testified that the deceased was in a dying condition when brought to his office; that his nose was broken; that there was a contusion on the top of his head; and that he died of cerebral hemorrhage caused by the rupture of a blood-vessel at the base of the brain. The verdict was clearly right, or, at least, the appellant has no right to complain. If there was any error it was upon the side of leniency.

The conduct of the bailiff, in walking with the jury about the city and passing the place of the homicide, was reprehensible in the extreme, and for it he was deserving of punishment. Such conduct upon the part of a careless or perverse bailiff often makes a new trial necessary, greatly to the prej-

udice of the administration of justice. The authority of the court to take the jury walking for exercise should not have been construed as permission to go with them where they did. But with respect to such misconduct the law is well settled that it will not authorize a new trial where, as in the present case, it is shown that the jury were not subjected to any improper influences, and were not in any way attempted to be tampered with, and where the verdict is clearly right upon the evidence. *Barlow* v. *State*, 2 Blackf. 114; *Creek* v. *State*, 24 Ind. 151; *Riley* v. *State*, 95 Ind. 446; *Jones* v. *People*, 6 Col. 452; S. C., 45 Am. R. 526.

Counsel for the appellant urge that the evidence fails to prove the venue as laid in the indictment. The indictment was returned by the grand jury of Floyd county, and the offence was charged to have occurred in that county. The evidence shows that the homicide was committed in the city of New Albany. We are bound to know that that city is in Floyd county. The evidence as to the venue was sufficient. *Wiles* v. *State*, 33 Ind. 206; *Whitney* v. *State*, 35 Ind. 503; *Cluck* v. *State*, 40 Ind. 263; *Beavers* v. *State*, 58 Ind. 530.

As already stated the appellant was found guilty of voluntary manslaughter. The distinction between voluntary and involuntary manslaughter is, that in the former there is a purpose or intention to take life; but in the latter the killing is unintentional, but is done in the commission of some unlawful act. Section 1908, R. S. 1881; *Bruner* v. *State*, 58 Ind. 159; *Adams* v. *State*, 65 Ind. 565.

It is insisted that the evidence fails to show that the appellant intended to take the life of the deceased, and that the conviction, therefore, should have been for involuntary manslaughter. The question of intent was one of fact for the jury. The jury must have found that the appellant intended to kill the deceased. We are not able to say that this conclusion was wrong. The violent attack upon the deceased, speedily followed by fatal consequences, leaves reasonable ground for the inference that there was a purpose to take life.

The evidence, at any rate, tends to justify such a conclusion, and in such case we can not reverse the judgment merely upon a question of evidence.

There was no error in overruling the motion for a new trial.

The judgment is affirmed.

