Filed Nov. 25, 1884.

---

No. 11,738.

## NORTON v. THE STATE.

CRIMINAL LAW.— *Voluntary Manslaughter.— Intent.— Instruction.—* An instruction to the jury, in the form of a hypothetical case, stated as constituting voluntary manslaughter, which does not embrace the element that the fatal blow must have been *voluntarily* inflicted, is erroneous.

From the Vermillion Circuit Court.

*T. F. Davidson, J. Jump* and *C. W. Ward,* for appellant.

*H. H. Conley,* Prosecuting Attorney, *T. N. Rice* and *J. T. Johnston,* for the State.

NIBLACK, J.—Joseph Norton, the appellant here, was indicted in the Parke Circuit Court for the murder of William

H. Hensley.   On his application the venue was changed to
the Vermillion Circuit Court, where the cause was tried at
the February term, 1884, resulting in a verdict of guilty of
manslaughter and a sentence to the State's prison for a term
of twenty-one years.

The difficulty which culminated in the death of Hensley
began while the parties, with others, were playing a game of
billiards, and the fatal blow was inflicted upon Hensley's
head with a billiard cue.

Several questions were reserved during the progress of the
cause, but the only complaint specifically made here of the
proceedings below is based upon the refusal of the circuit
court to grant a new trial.

The circuit court, in connection with other charges, in-
structed the jury that, " If you shall be satisfied from the
evidence in the cause, beyond a reasonable doubt, that the
defendant and the deceased, while engaged in a game of bil-
liards, became involved in an angry controversy, each of them
at the time having in his hands a billiard cue, and that such
billiard cue was a dangerous weapon ; that the deceased was
stripped of his coat, and that the defendant could see that
he had no other arms than the billiard cue ; that there was
no great disparity in the physical strength of the defendant
and the deceased, and that the deceased then, in the presence
of the defendant, voluntarily relinquished the billiard cue,
which he had in his hands, and assaulted the defendant with
his naked hands, such assault under such circumstances would
not justify the defendant in taking the decedent's life, or in
striking him a blow with a weapon reasonably calculated to
destroy his life, even though you should believe that the de-
ceased had, prior thereto, made threats against the life of the
defendant, and that he was of a violent and dangerous char-
acter, and that these facts were known to the defendant, and
if he did, under such circumstances, strike the deceased a
blow which resulted in his death, he would be guilty of the
crime of manslaughter."

Norton *v.* The State.

This instruction is claimed to have been erroneous because, amongst other things, of its failure to tell the jury that the fatal blow must have been *voluntarily* given to constitute the killing manslaughter.

The statutory definition of the crime of manslaughter is, "Whoever unlawfully kills any human being without malice, express or implied, either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act, is guilty of manslaughter, and, upon conviction thereof, shall be imprisoned in the State prison not more than twenty-one years nor less than two years." R. S. 1881, section 1908. To constitute the killing of a human being manslaughter, it follows that the fatal blow must be given either *voluntarily*, as well as unlawfully, upon a sudden heat, or *involuntarily*, but in the commission of some unlawful act. An unlawful intention of some kind must, therefore, exist in the mind of the offending party when the fatal injury is inflicted.

It is evident from the whole record that the circuit court intended, by the instruction above set out, to tell the jury what would, as applicable to a certain view of the evidence, make out a case of voluntary manslaughter, and yet it failed to say that the fatal blow must have been *voluntarily* inflicted. There is an important difference between voluntary and involuntary manslaughter, and consequently that difference ought to be carefully observed, when attempting to define either the one or the other. *Bruner* v. *State*, 58 Ind. 159; *Adams* v. *State*, 65 Ind. 565; *Powers* v. *State*, 87 Ind. 144; *State* v. *Lay*, 93 Ind. 341.

The hypothetical facts enumerated in the instruction may have all been found to be true by the jury, and yet if the appellant only *accidentally* killed Hensley, he was not guilty of manslaughter. Hence the importance of the inquiry by the jury as to whether the death wound was *voluntarily* inflicted.

The circuit court, therefore, erred in telling the jury that upon the hypothetical facts, enumerated for it, being found

true, the appellant was guilty of manslaughter.  The instruction now before us is, in some respects, quite analogous to the instruction held to have been erroneously given in the case of *Brooks* v. *State*, 90 Ind. 428.  In that case we said : " Under our system of practice, the court may sum up the evidence and submit hypothetical cases to the jury, but to do either of those things thoroughly and well usually requires very great care.  It is a hazardous proceeding for the court, either directly or through the medium of hypothetical cases, to attempt any comments upon the evidence, and particularly to express any opinion upon it beyond an intimation or statement as to what certain evidence may *tend* to prove.  The safer way is for the court to announce general principles applicable to the salient points of the evidence, and leave all inferences from the facts apparently proven, or which the evidence tended to establish, to the jury."

These remarks are as pertinent to the case in hearing as they were to the case from which they are taken, and have an especial application to the trial of all criminal cases, where, as in this State, the jury are the judges of the law as well as the evidence.

Other questions were reserved at the trial, but as the judgment must, in any event, be reversed, we need not now specially refer to, or make any distinct rulings upon, them.  The case of *Boyle* v. *State*, 97 Ind. 322, may afford some assistance when the cause shall be again tried.

The judgment is reversed, and the cause remanded for a new trial.

The clerk will give the necessary notice for the return of the prisoner to the custody of the sheriff of Vermillion county.

Filed Nov. 24, 1884.