Argued September 9, reversed November 3, petition for rehearing
denied December 7, 1965, Certioari to United States Supreme
Court April 22, 1966, mandate January 9, 1967

# LEE E. A. PARKER *v.* GLADDEN

407 P. 2d 246

*W. M. Thompson,* Assistant Attorney General, Salem, argued the cause for appellant. On the brief were Robert Y. Thornton, Attorney General, Salem, C. L. Marsters, Assistant Attorney General, Salem, and George Van Hoomissen, District Attorney, Portland.

*William J. Sundstrom,* Portland, argued the cause and filed a brief for respondent.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

DENECKE, J.

The petitioner seeks post-conviction relief. He was convicted of second-degree murder in 1961 and his conviction was affirmed upon appeal by this court. In his petition for post-conviction relief he alleges misconduct upon the part of the jury and bailiff. A hear-

ing was had and the post-conviction trial court found misconduct, that such misconduct was prejudicial, and ordered a new trial. The warden appeals.

The post-conviction statute (ORS 138.550(2)) provides:

"When the petitioner sought and obtained direct appellate review of his conviction and sentence, no ground for relief may be asserted by petitioner in a petition for relief under ORS 138.510 to 138.680 unless such ground was not asserted and could not reasonably have been asserted in the direct appellate review proceeding. * * *"[1]

█ Petitioner alleged that he could not have raised the issue of misconduct prior to this time. The trial court made no finding on this issue. We will assume for the purposes of this decision that the issue of misconduct could not reasonably have been raised upon appeal.[2]

From the opinion of the trial court we believe it found that the following occurred: (1) During the trial, the bailiff stated to an alternate juror about the defendant, "Oh, that wicked fellow, he is guilty." This was overheard by a regular juror; (2) The bailiff told an unknown juror during the course of the trial, "If there is anything wrong the Supreme Court will correct it." This was overheard by two regular jurors; and (3) After deliberations had commenced, the bailiff handed a note to a juror from the juror's wife. The note either pertained to the juror's birthday or informed him of his wife's illness or accident. These

[1] This only applies if petitioner was represented on appeal by counsel, which he was.

[2] We need not pass upon the possible conflict between the above-quoted statute and Fay v. Noia, 372 US 391, 83 S Ct 822, 9 L ed2d 837 (1963).

findings were largely based upon the testimony of certain jurors which was adduced at the post-conviction hearing.

The trial court apparently was of the opinion that the merit of the post-conviction petition should be judged by the same criteria as that statutorily fixed for judging a motion for new trial. It concluded "that the unauthorized communication was prejudicial and that such conduct materially affected the rights of the defendant." (The latter is the test established for the granting of a new trial. ORS 17.610.)

The trial court apparently did not consider whether the conduct constituted a ground for relief as stated in the post-conviction statute.

The grounds for post-conviction relief are limited. Error at the trial, even though it be considered reversible, prejudicial or materially affecting the rights of the party, is not necessarily a sufficient basis upon which to grant post-conviction relief. Post-conviction is not a delayed appeal. The basic purpose of the Act was not to enlarge the grounds for post-conviction relief; it was to end the confusion over which of the common-law writs was the proper vehicle to seek relief by providing a single exclusive remedy. *Brooks v. Gladden,* 226 Or 191, 195, 358 P2d 1055, cert den 366 US 974, 81 S Ct 1942, 6 L ed2d 1263 (1961); *Strong v. Gladden,* 225 Or 345, 348, 358 P2d 520 (1961); Collins and Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337 (1960).

ORS 138.530 provides that post-conviction relief shall be granted only when one or more of the following grounds is established:

"(a) A substantial denial in the proceedings resulting in petitioner's conviction, or the appellate

review thereof, of petitioner's rights under the Con-stitution of the United States, or under the Con-stitution of the State of Oregon, or both, and which denial rendered the conviction void.

"(b) Lack of jurisdiction of the court to impose the judgment rendered upon petitioner's conviction.

[(c) and (d) have no application here.]

"(2) * * * where such relief would have been available prior to May 26, 1959 [the effective date of the act], under the writ of habeas corpus * * *."

The question we have is whether the bailiff's con-duct, found by the trial court to be error and preju-dicial to the petitioner's cause, amounts to a substantial denial of petitioner's rights under the Constitutions of the United States or Oregon.⁹

In *Brooks v. Gladden,* supra, we observed that in this state a party has an absolute right to have the jury polled. However, we then went on to hold that a deprivation of such right is not a substantial denial of a constitutional right.

■ That the indictment does not state facts consti-tuting a crime can be asserted as error for the first time upon appeal. *State v. Goesser,* 203 Or 315, 280 P2d 354 (1955). Nevertheless, we have held that the failure of the indictment to state facts sufficient to constitute a crime is not a ground for post-conviction relief. *State v. Cloran,* 233 Or 400, 414, 374 P2d 748, 377 P2d 911, 378 P2d 961, 98 ALR2d 732 (1963).

Other courts have likewise held that mere reversible error is not grounds for post-conviction relief. *United States ex rel Tisi v. Tod,* 264 US 131, 44 S Ct 260,

---

⑨ The bailiff's statement that the defendant was guilty is the most flagrant error and it will not be necessary to treat the other two grounds.

68 L ed 590 (1924), was a federal habeas corpus appeal. Mr. Justice Brandeis for the Court stated, "Under these circumstances mere error, even if it consists in finding an essential fact without adequate supporting evidence, is not a denial of due process of law." (264 US at 134)

*Sunal v. Large,* 332 US 174, 67 S Ct 1588, 91 L ed 1982 (1947), was likewise a federal habeas corpus appeal. The petitioner was convicted of violating the Selective Service Act by not reporting for induction. At the trial he offered evidence to show that his selective service classification was invalid. Proving this would have been a complete defense. The trial court held such evidence to be inadmissible. This was thought to be the law at the time; however, the United States Supreme Court had not passed upon the issue. The petitioner took no appeal. Subsequently, in another case, the Supreme Court decided that trial courts should determine whether defendants' draft classification was correct.

The majority, speaking through Mr. Justice Douglas, held that the petitioner Sunal should have appealed and had no right to habeas corpus. The Court stated:

"An endeavor is made to magnify the error in these trials to constitutional proportions by asserting that the refusal of the proffered evidence robbed the trial of vitality by depriving defendants of their only real defense. But as much might be said of many rulings during a criminal trial. Defendants received throughout an opportunity to be heard and enjoyed all procedural guaranties granted by the Constitution. Error in ruling on the question of law did not infect the trial with lack of procedural due process. * * *" (332 US at 182)

*Turner v. State of Louisiana,* 379 US 466, 85 S Ct 546, 13 L ed2d 424 (1965), concerned the constitutional effect of misconduct in caring for the jury. This was heard upon certiorari to the state supreme court. The defendant was convicted of murder. The chief deputy sheriff and another deputy were principal witnesses for the prosecution. They testified that the defendant led them to the clip from the murder pistol and made a confession to them. The voluntariness of the confession was an issue and these deputies were crucial witnesses upon this issue. In accordance with Louisiana law, the jury was placed in charge of the sheriff. In fulfillment of this duty these two deputies "were in close and continual association with the jurors" for the three days of the trial. The court stated:

"It is true that at the time they testified in open court Rispone and Simmons [the two deputies] told the trial judge that they had not talked to the jurors about the case itself. But there is nothing to show what the two deputies discussed in their conversations with the jurors thereafter. * * * We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial—an association which gave these witnesses an opportunity, as Simmons put it, to renew old friendships and make new acquaintances among the members of the jury." (85 S Ct at 550)

The Court reversed, holding that the conduct of the trial violated the Fourteenth Amendment.

"In the constitutional sense, trial by jury in a criminal case necessarily implies at the very least that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-exami-

nation, and of counsel. What happened in this case operated to subvert these basic guarantees of trial by jury. * * *" (85 S Ct at 550)

■ In a broad sense the cases are similar. In the *Turner* case, the jury was exposed to out-of-courtroom influence in the form of constant association with the two key witnesses. In this case one regular juror was exposed to out-of-courtroom influence in the form of overhearing the bailiff express his opinion that the defendant was guilty. While there is the similarity, the difference in degree of the out-of-courtroom influence is so great as to lead us to the conclusion that the bailiff's misconduct did not deprive defendant of a constitutionally correct trial.

The problem here, as it is in civil litigation and in direct criminal appeals, is the balancing of the two desirable objectives,—giving finality to verdicts and protecting jurors from harassment, with another equally desirable objective, guaranteeing a constitutionally fair trial to an accused or any other party. *State v. Gardner,* 230 Or 569, 574, 575, 371 P2d 558 (1962).

We have frequently cited and quoted *McDonald v. Pless,* 238 US 264, 267-268, 35 S Ct 783, 59 L ed 1300 (1915), on the desirability of the first two above-stated objectives:

"* * * But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct suffi-

cient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

"* * * And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' *Cluggage v. Swan,* 4 Binn. 155 [5 Am. Dec. 400]; *Straker v. Graham,* 4 M. & W. 721."

■ Denying a convicted defendant the right to probe a jury verdict for vulnerability is not a denial of due process of law, *United States v. Provenzano,* 240 F Supp 393, 412 (D NJ 1965).

In *State v. Ausplund,* 86 Or 121, 135, 167 P 1019 (1917), the charge was abortion. After the trial, three jurors made affidavits that during deliberations one juror stated that during a recess a neighbor had told him that the defendant had performed abortions on previous occasions. The trial court refused to grant a new trial and upon direct appeal the conviction was affirmed. The decision of the court in effect was that such evidence would not even be received for the reason that it would destroy the finality of the jury's verdict.

In *State v. Ausplund,* supra, it was acknowledged that *Clyde Mattox v. United States,* 146 US 140, 13 S Ct 50, 36 L ed 917 (1892), was to the contrary. This court believed that decision was greatly limited by the later decision of *McDonald v. Pless,* supra. The *Mattox* case in any event is not controlling here as it was a direct appeal from a federal court and only held that the lower court committed error, not constitutional error.

■ Trial by jury is the most satisfactory method we have yet devised to determine disputed facts. We know, however, that it is a rough, imperfect instrument, not a precision tool. We know it is influenced by inside prejudices and outside influences, as is any other human institution. Because it is the best procedure we have, we hide its imperfections by granting finality to its verdict. The only exception to such finality is if the imperfection is so apparent and blatant that granting finality would "violate the plainest principles of justice." *McDonald v. Pless,* supra, 238 US at 269.

We hold that one juror's overhearing of the bailiff's opinion that the defendant was guilty does not deprive the defendant of a constitutionally fair trial and, therefore, is not a ground for post-conviction relief.

Reversed.