WAYE *v.* STATE OF INDIANA.

[No. 268S35.   Filed October 26, 1970.   No petition for rehearing filed.]

*Carl J. Sandy,* of Lafayette, for appellant.

*Theodore L. Sendak,* Attorney General, *Richard V. Bennett,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was found guilty of the crime of second degree burglary after a trial by jury. Appellant was sentenced to the Indiana State Prison for a term of not less than two nor more than five years.

Although appellant assigns as error the overruling of his motion for a new trial and his belated motion for new trial, the only argument which appellant presents to this Court concerns alleged misconduct of the jury in what appellant claims is an unauthorized view of the premises. The other issues which were raised in appellant's motions for new trial and in his assignment of errors were neither briefed nor argued before this Court, and are, therefore,

deemed to have been waived. *Krivanek* v. *State* (1969), 252 Ind. 277, 247 N. E. 2d 505, 17 Ind. Dec. 489.

The appellant was accused of burglarizing a business establishment in downtown Lafayette, Indiana, known as Wagon Wheel, Inc., doing business as the Fireside Lounge.

A police officer had testified at the trial that while seated in his patrol car at an intersection some 200 feet from the building in question he observed the appellant emerge from the building.

Affidavits submitted by the foreman of the jury and one other member of the jury read as follows:

"STATE OF INDIANA ⎫ SS:
COUNTY OF TIPPECANOE ⎭

## "AFFIDAVIT

"Comes now Gilbert S. Banker, being first duly sworn upon his oath and says:

"1. That he sat as a juror in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165 in Tippecanoe County, Indiana.

"2. That he was selected as foreman in said jury.

"3. That on the 15th day of November, 1967, at a time after which the cause had been submitted to the jury, a first ballot was taken by said jury with the results being, to the best of his memory, 7 votes of guilty and the balance being not guilty or undecided.

"4. That throughout the entire deliberations of said jury upon the question of second degree burglary, the crucial element upon which the jury disagreed was that of entry of the defendant.

"5. That after the abovementioned first ballot, the jury was taken by the bailiff to the Downtowner Restaurant.

"6. That upon going to and returning from said restaurant, the jury had occasion to and did view the scene of the alleged crime.

"7. That after returning to said jury room, the views observed by the jurors were openly discussed by all jurors present.

"8. That the question of entry depended directly upon the jury's determination as to whether Officer Moser was

clearly able to see the defendant entering or exiting from said building.

"9. That said jurors, in their deliberations, discussed the view which they had observed in relation to that which Officer Moser had testified to having seen.

## " 'EXHIBIT A'

"10. That the jury openly discussed what they had observed in relation to the fact that the scene was dark both at the time which they observed it and at the time referred to in Officer Moser's testimony."

"STATE OF INDIANA
COUNTY OF TIPPECANOE } SS:

## "AFFIDAVIT

"Comes now Patricia Eylens, being first duly sworn and upon her oath says:

"1. That she sat as a juror in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165 in Tippecanoe County, Indiana.

"2. That on the 15th day of November, 1967, at a time after which the cause had been submitted to the jury, several ballots were taken by said jury with the results being that the jury was undecided as to its verdict.

"3. That throughout the deliberations of said jury, upon the question of the guilty or innocence of the defendant on the charge of second degree burglary, the element upon which the jury disagreed was that of entry by the defendant.

"4. That after the above-mentioned ballots, the jury was taken by the bailiff to the Downtowner Restaurant for dinner.

"5. That upon going to and returning from said restaurant, the jury had occasion to and did view the scene of the alleged crime.

"6. That after returning to said jury room, the views observed by the jurors were openly discussed in the presences of all jurors.

"7. That the above-mentioned question of entry clearly depended upon the jury's determination as to whether prosecuting witness Edward Moser was able to see the defendant entering or exiting from said alleged scene in view of the conditions prevailing, to-wit: darkness and distance.

"8. That said jurors, in their deliberations, discussed the view which they had observed in relation to that which Edward Moser had testified to having seen, and at that time compared said *said* views and considered the fact that they had observed the

" 'EXHIBIT C'

scene after dark and from the approximate distance at which Mr. Moser testified to having observed the scene.

"9. That affiant believes that these deliberations regarding their view of the scene contributed to some degree to the ultimate verdict of the jurors in regard to the element of entry."

The State filed the affidavit of the bailiff, which affidavit reads as follows:

"STATE OF INDIANA ⎫
COUNTY OF TIPPECANOE ⎬ SS:

"AFFIDAVIT

"Richard Vandermay, Sr., being first duly sworn upon his oath, deposes and says:

"1. That he was the baliff for the Superior Court of Tippecanoe County in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165.

"2. That on the 15th day of November, 1967, the said cause was submitted to the Jury and they commenced their deliberations.

"3. That while the Jury was deliberating said cause, the Jury was taken by the baliff from Tippecanoe County Courthouse east on the north side of Main Street to the Downtowner Restaurant which is located east of the intersection of Fifth Street and Main on the North side of Main Street in the City of Lafayette, Indiana, at approximately 5:55 P.M. C.D.T. for their dinner.

"4. After the completion of the Jury's dinner, the Jury returned to the Tippecanoe County Courthouse by the same route.

"5. At no time did the Jury or any of its members while in the custody of the baliff going to the restaurant or returning to the Courthouse, walk past the Fireside Lounge which is located north on Fifth Street, the third business

door north of the intersection of Columbia and Fifth Street in the City of Lafayette, Indiana.

"6. That at no time while the baliff was conducting the Jury to and from its meal did the baliff observe any of the jurors stopping and looking at the Fireside Lounge, nor did the baliff overhear any of the jurors discussing the entrance to the Fireside Lounge nor any of the testimony of any of the witnesses concerning the entrance or view of the Fireside Lounge."

The appellant recognizes the well established principle that jurors cannot impeach their own verdicts. *Krivanek, supra; Luck* v. *State* (1884), 96 Ind. 16. The appellant, however, maintains that this case falls within an exception to the rule in that jurors made an unauthorized visit to the scene of the crime, and the influence of this unauthorized view is admissible under the rules set out under *Conrad* v. *State* (1896), 144 Ind. 290, 43 N. E. 221.

An examination of the affidavits filed in this case, however, discloses that the factual situation here more nearly parallels that in *Luck, supra,* rather than in *Conrad.* In *Luck* the Court held that the mere fact that the jury walked past the scene of the crime is not prejudicial unless they were subjected to improper influences.

In *Conrad* it was pointed out that 11 of the 12 jurors made an unauthorized visit to the jail to view the chambers where an alleged unsuccessful suicide attempt had taken place. The Court distinguished the *Conrad* factual situation from *Luck* by stating:

"* * * In the present case, however, the misconduct was that of the jurors in violating the injunction of the court and in not only making a view of the location without the permission of the court or the consent of all the parties, but in conversing with and permitting witnesses in the case to converse with them about a material question in the case, and in making experiments to illustrate the suggestion of such witnesses." * * *

"In the present case, while engaged in an unauthorized act, the jurors do that which, strictly speaking, they had no right to do, that is to say, they conversed with others

upon a question of importance in the case and made illustrations to prove the truth or falsehood of the appellant's evidence of insanity. Can it be said that because the evidence clearly shows the appellant's guilt that such conduct was not prejudicial to his rights? We think it cannot."

We find nothing in the case at bar to parallel the situation before the Court in *Conrad*. In the case at bar the factual situation as set out in the affidavits does not indicate that any special trip was made to view the premises. The jurors were simply on a direct route from the courthouse to a nearby restaurant when they passed within sight of the scene of the crime. There is no indication in any of the affidavits that any third person communicated with them concerning their viewing of the scene or that they had any type of meeting at the scene or conducted any experiments. The mere fact that they passed near the scene of the alleged incident appears to have had no more influence upon their determination than the fact that the scene was a public location in downtown Lafayette. The trial court entertained both the affidavits of the jurors and the affidavit of the bailiff and did not find cause for the granting of a new trial. We find no error in the trial court's ruling.

We feel that this case comes within the principles enunciated in *Luck, supra*. We would point out, however ,the Court in *Luck* saw fit to criticize the bailiff for his activities in that case. We do not find this to be the situation in the case at bar. There is no indication that the bailiff in any way conducted himself in an improper manner.

The trial court is in all things affirmed.

Hunter, C.J., Arterburn and DeBruler, JJ., concur; Jackson, J., dissents with opinion.

## DISSENTING OPINION

JACKSON, J.—I am unable to concur in the majority opinion and dissent thereto.

Appellant was convicted of the crime of Second Degree Burglary, after a jury trial, in the Superior Court of Tippecanoe County. The affidavit charging the appellant with the crime was filed on March 27, 1967, and reads in pertinent part as follows:

"AFFIDAVIT CHARGING SECOND DEGREE BURGLARY

The undersigned affiant, being first duly sworn, on oath says that on the 21st day of March, 1967, at the County of Tippecanoe in the State of Indiana, Harry W. Morinskey and Robert E. Waye did then and there unlawfully, feloniously and burglariously break and enter into the building structure of the Wagon Wheel, Inc., an Indiana corporation, doing business as the Fireside Lounge, at 118 North 5th Street in the City of Lafayette, in said County and State, which building was not a place of human habitation, with the intent to commit a felony therein, to wit: unlawfully and feloniously to obtain and exert unauthorized control over the property of the said Wagon Wheel, Inc., an Indiana corporation, doing business as the Fireside Lounge, intending to deprive the said Wagon Wheel, Inc., an Indiana corporation, doing business as the Fireside Lounge, permanently of the use and benefit of said property contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Indiana."

The statute under which the appellant was charged is Ind. Ann. Stat. § 10-701(b) (1956), which reads as follows:

"Whoever breaks and enters into any boat, wharf-boat, or other water-craft, interurban-car, street-car, railroad-car, automobile, airplane, or other aircraft, or any building or structure other than a dwelling-house or place of human habitation, with the intent to commit a felony therein, shall be guilty of burglary in the second degree, and upon conviction shall be imprisoned not less than two (2) years nor more than five (5) years and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period: Provided, however, That the court shall have power to suspend prison sentence and place the defendant on probation in accordance with existing law."

On December 1, 1967, the appellant was sentenced to the Indiana State Prison for a term of not less than two (2) nor more than five (5) years.

Appellant's motion for a new trial was filed on November 28, 1967, and was overruled on December 1, 1967. On December 22, 1967, the appellant filed a Motion To Reconsider And Belated Motion For New Trial, which was amended on January 11, 1968. In the motion to reconsider the appellant alleged certain jury misconduct, which was contained in the affidavits of two of the members of the jury which tried the appellant. The State filed a counter affidavit on January 16, 1968. On February 13, 1968, the trial court overruled the appellant's Amended Motion to Reconsider and Belated Motion for New Trial.

On appeal the appellant assigns as error the overruling of his motion for a new trial as well as the overruling of his amended motion to reconsider and belated motion for new trial.

From the evidence adduced at trial it appears that at about 3:00 to 3:30 a.m. on March 21, 1967, Officer Edward L. Moser of the Lafayette Police Department was patrolling alone in a squad car near the vicinity of Columbia and 5th Streets in the City of Lafayette, Indiana. While traveling eastbound on Columbia, Officer Moser entered the intersection of Columbia and 5th, and stopped approximately in the center of the intersection and looked north along 5th Street to check for illegally parked vehicles. He then noticed a rather short man, subsequently identified as Harry W. Morinskey, Jr., standing in front of the Fireside Lounge, and a man whom he identified as the appellant in a crouched position coming out of the door of the Lounge.

Officer Moser testified that the Fireside Lounge, a tavern, is the third business on the west side of 5th Street, and approximately 150 to 200 feet north of Columbia. Officer Moser

stated that at the time he saw the suspects, 5th Street at that location was illuminated by "regular standard street lights", as well as an all night light in the parking area immediately north of the Lounge. He further said that the door to the Fireside Longe is flush with the building.

Upon observing the two men Officer Moser turned north on 5th and gave chase to the suspects as they fled west through the adjacent parking lot and driveway. Officer Moser apprehended Morinskey after firing a warning shot. The appellant was apprehended by other police officers who responded to Officer Moser's radio message.

Officer Moser stated that upon returning to the tavern he found that the bottom half of the front door glass had been broken out. He also found some broken green glass which appeared to be pieces of a coffee cup. Further investigation disclosed that nothing inside the Lounge had been disturbed.

On cross examination Officer Moser testified that the distance between the aluminum crossbar at the middle of the door and the bottom of the door was approximately thirty inches. He further stated that there was no evidence to indicate that anyone had been inside the tavern. Finally, Officer Moser testified that in spite of the somewhat dark conditions he was positive that he saw the appellant coming through the bottom portion of the door. The officer's testimony seems to be conflicting as to whether or not the tavern was in fact entered.

Harry W. Morinskey, Jr., the alleged accomplice of the appellant, took the stand and testified that he, his wife and the appellant left the Morinskey home in an automobile and later drove up in front of the Fireside Lounge. He stated that he got out of the car and threw a cup through the window of the tavern. He then got back into the car and they drove around the corner and then into the parking lot where they waited for a few minutes. He stated that he and Waye then left the car and went to the tavern, and that shortly after

arriving there the police came. He testified that neither he nor the appellant ever entered the building.

Although the appellant assigns as error the overruling of his motion for a new trial and amended motion to reconsider and belated motion for new trial, the only argument which the appellant presents to this court concerns the prejudicial effect of the alleged jury misconduct. The other issues present in appellant's assignment of errors which were neither briefed nor argued by the appellant before this Court are thereby deemed to have been waived. *Lambert* v. *State* (1969), 252 Ind. 441, 249 N. E. 2d 502; *Krivanek* v. *State* (1969), 252 Ind. 277, 247 N. E. 2d 505; *McGill* v. *State* (1969), 252 Ind. 293, 247 N. E. 2d 514.

The affidavits of the jurors upon which the appellant relies read in pertinent part as follows:

"Comes now Gilbert S. Banker, being first duly sworn upon his oath and says:

1. That he sat as a juror in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165 in Tippecanoe County, Indiana.

2. That he was selected as foreman in said jury.

3. That on the 15th day of November, 1967, at a time after which the cause had been submitted to the jury, a first ballot was taken by said jury with the results being, to the best of his memory, 7 votes of guilty and the balance being not guilty or undecided.

4. That throughout the entire deliberations of said jury upon the question of second degree burglary, the crucial element upon which the jury disagreed was that of entry of the defendant.

5. That after the abovementioned first ballot, the jury was taken by the bailiff to the Downtowner Restaurant.

6. That upon going to and returning from said restaurant, the jury had occasion to and did view the scene of the alleged crime.

7. That after returning to said jury room, the views observed by the jurors were openly discussed by all jurors present.

8. That the question of entry depended directly upon the jury's determination as to whether Officer Moser was clearly able to see the defendant entering or exiting from said building.

9. That said jurors, in their deliberations, discussed the view which they had observed in relation to that which Officer Moser had testified to having seen.

### 'EXHIBIT A'

10. That the jury openly discussed what they had observed in relation to the fact that the scene was dark both at the time which they observed it and at the time referred to in Officer Moser's testimony."

"Comes now Patricia Eylens, being first duly sworn and upon her oath says:

1. That she sat as a juror in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165 in Tippecanoe County, Indiana.

2. That on the 15th day of November, 1967, at a time after which the cause had been submitted to the jury, several ballots were taken by said jury with the results being that the jury was undecided as to its verdict.

3. That throughout the deliberations of said jury, upon the question of the guilt or innocence of the defendant on the charge of second degree burglary, the element upon which the jury disagreed was that of entry by the defendant.

4. That after the abovementioned ballots, the jury was taken by the bailiff to the Downtowner Restaurant for dinner.

5. That upon going to and returning from said restaurant, the jury had occasion to and did view the scene of the alleged crime.

6. That after returning to said jury room, the views observed by the jurors were openly discussed in the presence of all jurors.

7. That the above-mentioned question of entry clearly depended upon the jury's determination as to whether prosecuting witness Edward Moser was able to see the defendant entering or existing from said alleged scene in view of the conditions prevailing, to-wit: darkness and distance.

8. That said jurors, in their deliberations, discussed the view which they had observed in relation to that which

Edward Moser had testified to having seen, and at that time compared said views and considered the fact that they had observed the

'EXHIBIT C'

scene after dark and from the approximate distance at which Mr. Moser testified to having observed the scene.

9. That affiant believes that these deliberations regarding their view of the scene contributed to some degree to the ultimate verdict of the jurors in regard to the element of entry."

The elements of the crime of second degree burglary are: (1) breaking, (2) entry, (3) into a building or structure other than a dwelling house or place of human habitation, and (4) the intent to commit a felony. It is appellant's contention that the alleged unauthorized view of the premises by the jury amounted to the reception of evidence de hors the record which tended to establish the requisite element of entry, and thereby deprived the appellant of his Sixth Amendment right to a trial by an impartial jury on the basis of the evidence in the record.

The State contends that there was, in fact, no view and points to the following affidavit of the bailiff in support of its position:

"Richard Vandermay, Sr., being first duly sworn upon his oath deposes and says:

1. That he was the bailiff for the Superior Court of Tippecanoe County in the criminal trial of Robert E. Waye on November 14, 1967, the same being Cause No. S-3165.

2. That on the 15th day of November, 1967, the said cause was submitted to the Jury and they commenced their deliberations.

3. That while the Jury was deliberating said cause, the Jury was taken by the bailiff from the Tippecanoe County Courthouse east on the north side of Main Street to the Downtowner Restaurant which is located east of the intersection of Fifth Street and Main on the North side of Main Street in the City of Lafayette, Indiana, at approximately 5:55 P.M. C.D.T. for their dinner.

4. After the completion of the Jury's dinner, the Jury returned to the Tippecanoe County Courthouse by the same route.

5. At no time did the Jury or any of its members while in the custody of the bailiff going to the restaurant or returning to the Courthouse, walk past the Fireside Lounge which is located north on Fifth Street, the third business door north of the intersection of Columbia and Fifth Street in the City of Lafayette, Indiana.

6. That at no time while the bailiff was conducting the Jury to and from its meal did the bailiff observe any of the jurors stopping and looking at the Fireside Lounge, nor did the bailiff overhear any of the jurors discussing the entrance to the Fireside Lounge nor any of the testimony of any of the witnesses concerning the entrance or view of the Fireside Lounge."

The State further contends that if there was a view the evidentiary effect of it could only have been cumulative as to the question of entry in that Officer Moser had previously testified that he saw the appellant "coming out" of the building. The State also argues that the affidavits of the jurors do not make it clear that the appellant was prejudiced by the unauthorized view. Finally, the State argues that the affidavits of jurors may not be used to impeach the verdict in which they participated in rendering.

As the State has pointed out, the traditional rule, first enunciated in *Vaise* v. *Delavel* (K.B. 1785) 99 Eng. Rep. 944, forbids jurors from impeaching their own verdicts. Moreover, this rule has been recognized as the law in this State. See: *Krivanek* v. *State, supra; Widup* v. *State* (1967), 250 Ind. 1, 230 N. E. 2d 767; *Groover* v. *State* (1959), 239 Ind. 271, 156 N. E. 2d 307; *White* v. *State* (1955), 234 Ind. 193, 125 N. E. 2d 442. There are, however, instances where indiscriminate application of the rule without regard to the attendant circumstances of the case to which the rule is applied will result in a prejudicial denial of fundamental constitutional guarantees.

In *Parker* v. *Gladden* (1967), 245 Ore. 426, 407 P. 2d 246,

the petitioner alleged in his petition for post conviction relief that he was denied a fair trial because of misconduct on the part of the jury and bailiff. A hearing was had on the petition and the post conviction trial court found for the petitioner. On appeal, the Supreme Court of Oregon reversed holding that the petitioner was not deprived of a "constitutionally correct trial." 407 P. 2d 246. In reaching its conclusion the Oregon court reasoned that the desirability of "giving finality to verdicts and protecting jurors from harrassment," 407 P. 2d 249, outweighed the desirability of "guaranteeing a constitutionally fair trial to an accused," id., and that testimony of jurors offered to impeach their own verdict could not be received except in those cases where to do so would "violate the plainest principles of justice." 407 P. 2d 250. Thus, although the Supreme Court of Oregon did not rule that the statements of the jurors were testimonially incompetent, in affirming the conviction it applied essentially the same rule against impeachment of verdicts that the State would have us apply to the case at bar.

However, the Supreme Court of the United States granted certiorari, 384 U. S. 904, 16 L. Ed. 2d 357, 86 S. Ct. 1345 (1966), and reversed. *Parker* v. *Gladden* (1966, 385 U. S. 363, 17 L. Ed. 2d 420, 87 S. Ct. 468. In its per curiam opinion the Court said:

> "We believe that the statements of the bailiff to the jurors are controlled by the command of the Sixth Amendment, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. It guarantees that 'the accused shall enjoy the right to a * * * trial, by an impartial jury * * * [and] be confronted with the witnesses against him * * *' As we said in *Turner* v. *Louisiana*, 379 U. S. 466, 472-473, 13 L. Ed. 424, 428, 429, 85 S. Ct. 546 (1965), 'the *"evidence developed" against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'"* (Emphasis supplied)

The Court went on to say "that the rights of confrontation and cross examination are among the fundamental requirements of a constitutionally fair trial." 17 L. Ed. 2d 423.

In *United States* v. *McMann*, 373 F. 2d 759 (Second Cir. 1967), the Second Circuit Court of Appeals applied *Parker* v. *Gladden, supra*, to an appeal from an order of the United States District Court for the Northern District of New York denying without a hearing the appellants' application for a writ of habeas corpus. In that case the appellants alleged that several of the jurors visited the scene of the crimes and there reenacted the crimes without the knowledge or authorization of the court, and without the appellants' knowledge. The appellants' allegations were supported by statements made by several of the jurors. On appeal, the Court of Appeals of New York affirmed the appellants' convictions, holding that jurors could not impeach the verdict which they duly rendered. *People* v. *DeLucia* (1965), 15 N. Y. 2d 294, 258 N. Y. S. 2d 377, 206 N. E. 2d 324. Inasmuch as *Parker* v. *Gladden, supra*, was handed down subsequent to the rulings of both the New York state court, and the Federal District Court, the Court of Appeals vacated the order of the district court in order to give the state court an opportunity to reconsider its decision in light of *Parker* v. *Gladden, supra*.

In its opinion the United States Court of Appeals stated:

"In *Parker* v. *Gladden, supra*, the United States Supreme Court has unequivocally held that the right of a defendant in a state criminal prosecution to the full judicial protection of a trial by an impartial jury and the confrontation of the witnesses against him *includes the right to protection from outside influences exerted upon the jurors*." (Emphasis supplied)

The court went on to say that due to "the close relationship between the issue of state law here involved and the newly articulated federal right, we think it proper to give the New York courts another opportunity to consider appellant's claims." 373 F. 2d 762.

On re-argument the Court of Appeals of New York, in *People* v. *DeLucia* (1967), 20 N. Y. 2d 275, 229 N. E. 211, 282 N. Y. S. 2d 526, stated:

"Our New York case law holds that statements by jurors impeaching their own verdicts are inadmissible. (See, e.g., *People* v. *Sprague*, 217 N. Y. 373, 11 N. E. 1077.) However, where the Supreme Court holds that a particular series of events, when proven, violates a defendant's constitutional rights, implicit in that determination is the right of the defendant to prove facts substantiating his claim.

The question which, therefore, presents itself in light of *Parker* v. *Gladden* is whether we should re-examine the applicability of the traditional common-law rule to circumstances such as those present in the case at bar or whether we should compel the defendants to seek the relief to which they are constitutionally entitled in the Federal courts. We believe that the undesirability of this latter alternative indicates that a re-examination of our common-law rule with respect to jurors in impeaching their own verdict is appropriate." 229 N. E. 2d 213.

In re-examining the common law rule, the New York court made the following observations:

"The policy reason for the present rule is, of course, that we do not wish to encourage the post-trial harassing of jurors for statements which might render their verdicts questionable. With regard to jury room deliberations, scarcely any verdict might remain unassailable, if such statements were admissible. Common experience indicates that at times articulate jurors may intimidate the inarticulate, the aggressive may unduly influence the docile. Some jurors may 'throw in' when deliberations have reached an impasse. Others may attempt to compromise. Permitting jurors to testify regarding such occurrences would create chaos.

On the other hand, a defendant has a right to a trial by a fair and impartial jury. The public policy considerations must at all times be weighed against the defendant's fundamental rights." 229 N. E. 2d 213.

In revising its rule to conform to the federal constitutional requirements the New York court wisely refused to abolish

the rule entirely. Instead, it held the common law rule inapplicable to those cases where the jurors are subjected to "outside influences", but valid as to those cases involving allegations as to statements made by the jurors during the course of their deliberations. The purpose of this distinction was to preserve the integrity of the jury system, and was justified by the court as follows:

"*   *   * the rule against jurors' impeachment of their verdicts should not operate in every case. Where, as in the case of statements regarding juryroom deliberations, every verdict might be rendered suspect, and jurors might become subjected to continuous post-trial harassment, the public policy reasons for holding such statements inadmissible must ordinarily override possible injustice to a defendant, for here our jury system itself is at stake.

Statements concerning outside influences on a jury, however, occurring less frequently and more susceptible to adequate proof, should be admissible to show that the defendant was prejudiced, for here the danger to our jury system is minimal compared with the more easily proven prejudice to the defendant." 229 N. E. 2d 214.

In light of the decision by the Supreme Court of the United States in *Parker* v. *Gladden, supra*, it is clear that this court can no longer indiscriminately apply the common law rule against juror's impeaching their own verdicts to those cases in which a defendant in a criminal trial alleges a prejudicial denial of a constitutional right. Rather, we must recognize "the right of the defendant to prove facts substantiating his claim." 229 N. E. 2d 213.

However, protection of this right will not compromise the integrity of the jury system if, as under the New York rule, the jurors' statements may be received only for the purpose of determining whether the jury was subjected to an outside influence, and not for the purpose of probing into the psychology and mechanics of the jury's deliberations.

The reason for the distinction is, we think, quite clear. Included within the defendant's Sixth Amendment rights

is the right to have the "evidence developed" against him "come from the witness stand in a public courtroom." *Turner* v. *Louisiana* (1965), 379 U. S. 466, 473, 13 L. Ed. 2d 424, 429, 85 S. Ct. 546. Further, each juror's verdict "must be based upon the evidence developed at the trial." 13 L. Ed. 2d 428. The right to be tried in a public courtroom with the attendant procedural rules and guarantees of due process would be meaningless if the jury were presented evidence from an extrajudicial source. Moreover, in such a situation it is impossible to guarantee that the jury's verdict will be based "upon the evidence developed at trial." id. Finally, the presence of an "outside influence" or extrajudicial evidence is an objective fact "susceptible to adequate proof." 229 N. E. 2d 214. In short, the fact either exists or does not exist, and may be proved just as any other objective fact is proved.

The same considerations do not apply, however, where the defendant challenges the subjective decision making processes of the jury during its deliberations. Trial by jury contemplates trial by a group of individuals who must attempt to reach a unanimous verdict. Trial by jury further contemplates that each juror, when convinced of his own conclusions, will attempt to persuade the other jurors to adopt his position. To hold that a defendant is prejudiced by the influence a persuasive juror may have on his fellow jurors, or by the negotiations and compromise inherent in jury deliberations would be to deprive the deliberations of the free and open discussion necessary for a thorough consideration of all the issues present. Moreover, to require jurors to divest themselves of their life experiences and individual knowledge when they retire to deliberate would be to deprive the jury system of the human element upon which its vitality depends.

Thus, both public policy and the integrity of the jury system require that the rule against receiving evidence from a juror which is offered to impeach the verdict in which the

juror participated must still apply to those cases where the alleged misconduct involves the free and open discussion and subjective influence of the jury deliberations. Therefore, a juror's statement, by affidavit or otherwise, which attempts to impeach the verdict on the basis of the psychological or mechanical aspects of juryroom deliberation is, and must remain, inadmissible.

However, we hold that statements by jurors which allege that material evidence other than that developed at trial was presented to the jury, or that other material extrajudicial influences were brought to bear on the jury are admissible to prove a prejudicial denial of the defendant's constitutional rights. *Parker* v. *Gladden, supra; United States* v. *McMann, supra; People* v. *DeLucia, supra.*

In the case at bar, the jurors' affidavits in question allege that the jurors were provided an unauthorized view of the scene of the alleged crime, and that this unauthorized view was persuasive in establishing the requisite element of entry. The appellant contends that the alleged view was prejudicial to him and should have resulted in the granting of his belated amended motion for a new trial.

With this contention we are compelled to agree. Not only did the alleged unauthorized view violate certain of the appellant's constitutional rights, but it also violated certain state statutory provisions. Ind. Ann. Stat. § 9-1809 (1956) provides:

> "Inspection of place.—Whenever, in the opinion of the court and with the consent of all the parties, it is proper for the jury to have a view of the place in which any material fact occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person, other than the officer and the person appointed to show them the place, shall speak to them on any subject connected with the trial."

In the case at bar, it is clear that the court did not order the view alleged, nor did "all the parties" consent to the view.

Further, Ind. Ann. Stat. § 9-1903 (1956) provides in part:

"The court shall grant a new trial to the defendant for the following causes, or any of them:

\* \* \* \*

Third. When the jury has received and considered any evidence, paper or document not authorized by the court.

Fourth. When the jury has been guilty of any misconduct tending to prevent a fair and due consideration of the case.

\* \* \* \*

Sixth. Accident or surprise which ordinary prudence could not have guarded against."

In the case at bar, as alleged by the affidavits of the jurors, the jury "received and considered" evidence "not authorized by the court." Although undoubtedly unintentional, this technically amounted to "misconduct tending to prevent a fair and due consideration of the case," in that it involved the reception of evidence not developed "from the witness stand in a public courtroom." *Turner* v. *Louisiana, supra.* Even though the alleged view was no doubt fortuitous, a motion for a new trial must be granted where there exists a prejudicial "accident or surprise which ordinary prudence could not have guarded against."

There is here present, however, some conflict as to whether there was, in fact, an unauthorized view. The affidavits of the jurors allege that there was such a view, while the bailiff states in his affidavit that the jurors at no time passed or looked at the Fireside Lounge. In view of this evidentiary conflict, this cause should be remanded to the trial court with instructions to hold a record hearing on the appellant's allegations. If the appellant's allegations are substantiated by the evidence adduced at such hearing, the appellant's belated amended motion for a new trial should be granted.

NOTE.—Reported in 263 N. E. 2d 165.